Filed 12/29/11

# IN THE SUPREME COURT OF CALIFORNIA

| | |
|---|---|
| FRANCES HARRIS et al., | ) |
| | ) |
| Petitioners, | ) |
| | ) S156555 |
| v. | ) |
| | ) Ct.App. 2/1  B195121 |
| THE SUPERIOR COURT OF | ) |
| LOS ANGELES COUNTY, | ) Los Angeles County |
| | ) Super. Ct. No. BC 246139 |
| | ) JCCP No. 4234 |
| Respondent; | ) |
| | ) |
| LIBERTY MUTUAL INSURANCE | ) |
| COMPANY et al., | ) |
| | ) |
| Real Parties in Interest. | ) |
| _____ | ) |
| | ) |
| LIBERTY MUTUAL INSURANCE | ) |
| COMPANY et al., | ) Ct.App. 2/1  B195370 |
| | ) |
| Petitioners, | ) Los Angeles County |
| | ) Super. Ct. No.  BC 246140 |
| v. | ) JCCP No. 4234 |
| | ) |
| THE SUPERIOR COURT OF | ) |
| LOS ANGELES COUNTY, | ) |
| | ) |
| Respondent; | ) |
| | ) |
| FRANCES HARRIS et al., | ) |
| | ) |
| Real Parties in Interest. | ) |
| _____ | ) |

1

This litigation tests whether certain insurance company claims adjusters are exempt employees, not entitled to overtime compensation under the Labor Code and regulations of the California Industrial Welfare Commission (IWC or Commission). Reviewing the trial court's denial of a summary adjudication motion, the Court of Appeal held the adjusters are not exempt employees as a matter of law. In doing so, the Court of Appeal misapplied the substantive law. We reverse.

## FACTS

Plaintiffs are claims adjusters employed by Liberty Mutual Insurance Company and Golden Eagle Insurance Corporation (collectively defendants). They filed four class action lawsuits alleging defendants erroneously classified them as exempt "administrative" employees and seeking damages based on unpaid overtime work. The four actions were coordinated into one proceeding by the Judicial Council. Plaintiffs also moved for class certification. The trial court certified a class of "all non-management California employees classified as exempt by Liberty Mutual and Golden Eagle who were employed as claims handlers and/or performed claims-handling activities."

Plaintiffs moved for summary adjudication of defendants' affirmative defense that plaintiffs were exempt from the overtime compensation requirements under IWC wage order No. 4. (Cal. Code Regs., tit. 8, § 11040 (Wage Order 4).) Defendants opposed the motion and moved to decertify the class.

The trial court decertified the class in part, depending on whether plaintiffs' claims arose before or after October 1, 2000, the date the IWC replaced an earlier version of Wage Order 4. The court afforded the disparate treatment because it felt bound by the authority of *Bell v. Farmers Ins. Exchange* (2001) 87 Cal.App.4th 805 (*Bell II*) and *Bell v. Farmers Ins. Exchange* (2004) 115 Cal.App.4th 715 (*Bell III*) (collectively *Bell* cases).

For claims arising before October 1, 2000, the trial court decided that the *Bell* cases compelled a ruling that the claims adjusters were nonexempt "production workers" under the version of Wage Order 4 adjudicated in those cases. (See *Bell II*, *supra*, 87

2

Cal.App.4th at p. 826.) The court decertified the class as to all claims arising after October 1, 2000, the effective date of a new Wage Order 4. The court did not believe the *Bell* cases applied to the revised version of Wage Order 4 because those cases did not consider the new wage order, nor did they apply the federal regulations specifically incorporated into it. Recognizing that the law was unsettled, the court suggested the parties seek interlocutory review by the Court of Appeal.

Both parties did so. Plaintiffs sought review of the order partially decertifying the class and denying their motion for summary adjudication. Defendants sought review of the trial court's partial denial of their motion to decertify the class.

A divided Court of Appeal issued an order to show cause and ruled for plaintiffs. It directed the trial court to vacate its prior order and enter an order granting plaintiffs' motion for summary adjudication of defendants' affirmative defense and denying defendants' motion to decertify.

The Court of Appeal's analysis focused on Wage Order 4. The majority concluded that, under the terms of that wage order, plaintiffs could not be considered exempt employees, either before or after the order's amendment. As we explain, the wage order cannot be interpreted so categorically. The approach employed by the Court of Appeal majority failed to properly analyze the question.

**DISCUSSION**

The IWC is a quasi-legislative agency that regulates aspects of the employment relationship. It promulgates wage orders that provide various exemptions from California's overtime requirements. Labor Code sections 1173, 1178 and 1178.5 authorize the IWC to regulate hours and wages in particular industries. We begin with a review of the wage orders and statutes at issue here.

Wage Order 4, promulgated by the IWC under Labor Code section 1173, appears in California Code of Regulations, title 8, section 11040 (Regulations section 11040). It relates to the hours and wages of those employed in "Professional, Technical, Clerical,

3

Mechanical, and Similar Occupations."  For our purposes, Wage Order No. 4-98 (Wage Order 4-1998) covers claims arising before October 1, 2000 and Wage Order No. 4-2001 (Wage Order 4-2001) applies to claims arising thereafter.[1]

Wage Order 4-1998 made "persons employed in administrative, executive, or professional capacities" exempt from overtime compensation requirements.  (Wage Order 4-1998, subd. 1(A).)[2]  Wage Order 4-1998 did not articulate the precise scope of the administrative exemption.  It did, however, limit the exemption to employees "engaged in work which is primarily intellectual, managerial, or creative, and which requires exercise

----

[1]     The Commission initially replaced Wage Order 4-1998 with Wage Order No. 4-2000, which took effect on October 1, 2000, and applies to claims arising on or after that date.  It then replaced Wage Order No. 4-2000 with Wage Order 4-2001, which was effective on January 1, 2001.

The Court of Appeal concluded that "there are no relevant differences between Wage Order 4-2000 and Wage Order 4-2001 for our purposes" and thus considered them together.  We conclude likewise.  For the purposes of this matter, we consider Wage Order 4-2001 as applying after October 1, 2000.

[2]     Wage Order 4-1998 provided as relevant:

"1.     Applicability of Order.  This Order shall apply to all persons employed in professional, technical, clerical, mechanical, and similar occupations whether paid on a time, piece rate, commission, or other basis, unless such occupation is performed in an industry covered by an industry order of this Commission, except that:

"(A)   Provisions of Sections 3 through 12 [governing, e.g., hours and days of work, minimum wages and rest periods] shall not apply to persons employed in administrative, executive, or professional capacities.  No person shall be considered to be employed in an administrative, executive, or professional capacity unless one of the following conditions prevails:

"(1)    The employee is engaged in work which is primarily intellectual, managerial, or creative, and which requires exercise of discretion and independent judgment, and for which the remuneration is not less than $1150.00 per month; or

"(2)    The employee is licensed or certified by the State of California and is engaged in the practice of [a profession such as law or medicine]."

4

of discretion and independent judgment, and for which the remuneration is not less than $1150.00 per month." (Wage Order 4-1998, subd. 1(A)(1).)

The practical effect of Wage Order 4-1998, and other orders issued by the IWC during that year, was that about eight million workers lost their right to overtime pay because the orders "deleted the requirement to pay premium wages after eight hours of work a day." (Stats. 1999, ch. 134, § 2, subd. (f), p. 1820, enacting Assem. Bill No. 60 (1999-2000 Reg. Sess.).) In response, the Legislature passed the "Eight-Hour-Day Restoration and Workplace Flexibility Act of 1999." (Stats. 1999, ch. 134, § 1, p. 1820, adding and amending provisions of Lab. Code, § 500 et seq.) The act amended Labor Code section 510, which provides that a California employee is entitled to overtime pay for work in excess of eight hours in one workday or 40 hours in one week. (Lab. Code, § 510, subd. (a).) However, Labor Code section 515, subdivision (a), added by the act, exempts from overtime compensation "executive, administrative, and professional employees" whose primary duties[3] "meet the test of the exemption," who "regularly exercise[] discretion and independent judgment in performing those duties" and who earn a monthly salary at least twice the state minimum wage for full-time employees. (*Ibid*.)

Under the statute then, to qualify as "administrative," employees must (1) be paid at a certain level, (2) their work must be administrative, (3) their primary duties must involve that administrative work, and (4) they must discharge those primary duties by regularly exercising independent judgment and discretion. The narrow question here involves the second point, whether plaintiffs' work is administrative. That is, whether it meets the test of the exemption. These statutory standards are further understood in light of the applicable wage order.

---

[3]    Wage Order 4-1998 and Wage Order 4-2001 define "primarily" as "more than one-half of the employee's work time." (Regs., § 11040, subd. 2(N).) Thus, in order to be covered by the administrative exemption under either order, employees must spend over one-half of their work time doing work that fits the test of the exemption.

Labor Code section 515, subdivision (a) directs the IWC to conduct a review of the duties that meet the test of the exemption and, if necessary, modify the regulations. After review, the Commission issued Wage Order 4-2001.[4]

---

[4]     In pertinent part, Wage Order 4-2001 provides:

"1.     Applicability of Order.  This order shall apply to all persons employed in professional, technical, clerical, mechanical, and similar occupations whether paid on a time, piece rate, commission, or other basis, except that:

"(A)   Provisions of sections 3 through 12 [governing, e.g., hours and days of work, minimum wages and rest periods] shall not apply to persons employed in administrative, executive, or professional capacities.  The following requirements shall apply in determining whether an employee's duties meet the test to qualify for an exemption from those sections:

"(1)    Executive Exemption. . . [¶] . . . [¶]

"(2)    Administrative Exemption.  A person employed in an administrative capacity means any employee:

"(a)    Whose duties and responsibilities involve either:

"(i) The performance of office or non-manual work directly related to management policies or general business operations of his/her employer or his/her employer's customers; or

"(ii) The performance of functions in the administration of a school system . . . ; and

"(b)    Who customarily and regularly exercises discretion and independent judgment; and

"(c)    Who regularly and directly assists a proprietor, or an employee employed in a bona fide executive or administrative capacity (as such terms are defined for purposes of this section); or

"(d)    Who performs under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge; or

"(e)    Who executes under only general supervision special assignments and tasks; and

"(f)    Who is primarily engaged in duties that meet the test of the exemption.  The activities constituting exempt work and non-exempt work shall be construed in the same manner as such terms are construed in the following regulations under the Fair Labor Standards Act effective as of the date of this order: 29 C.F.R. Sections 541.201-205, 541.207-208, 541.210, and 541.215.  Exempt work shall include,

6

A comparison of Wage Order 4-1998 and Wage Order 4-2001 reveals that the latter contains a much more specific and detailed description of work that is properly described as administrative. Whereas Wage Order 4-1998 contains only a single sentence relative to an employee involved in administrative work, Wage Order 4-2001 discusses the scope of the administrative exemption in seven fairly extensive and interrelated subdivisions. (Compare Wage Order 4-1998, subd. 1(A)(1) with Wage Order 4-2001, subd. 1(A)(2)(a)-(g).) Specifically, Wage Order 4-2001, subdivision 1(A)(2)(f) provides that the terms "exempt" and "non-exempt" are to be construed under certain incorporated regulations listed in the federal Fair Labor Standards Act then in effect. So, just as the statute is understood in light of the wage order, the wage order is construed in light of the incorporated federal regulations.

The precise question here is whether plaintiffs' work as claims adjusters is encompassed by the expanded language of the statute, wage orders, and federal regulations that delineate what work qualifies as administrative.

**The Administrative Exemption**

As part of its function, the IWC issues "Statements As To The Basis" (hereafter, Statement or Commission Statement) explaining "how and why the commission did what it did." (*California Hotel & Motel Assn. v. Industrial Welfare Com.* (1979) 25 Cal.3d 200, 213.) With respect to Wage Order 4-2001, the Commission Statement notes, "The IWC intends the regulations in these wage orders to provide clarity regarding the federal

for example, all work that is directly and closely related to exempt work and work which is properly viewed as a means for carrying out exempt functions. The work actually performed by the employee during the course of the workweek must, first and foremost, be examined and the amount of time the employee spends on such work, together with the employer's realistic expectations and the realistic requirements of the job, shall be considered in determining whether the employee satisfies this requirement.

"(g)  Such employee must also earn a monthly salary equivalent to no less than two . . . times the state minimum wage for full-time employment. . . ." (Regs., § 11040.)

7

regulations that can be used [to] describe the duties that meet the test of the exemption under California law, as well as to promote uniformity of enforcement. The IWC deems *only* those federal regulations *specifically* cited in its wage orders, and in effect at the time of promulgation of these wage orders, to apply in defining exempt duties under California law." (Italics added.)

Accordingly, Wage Order 4-2001 specifically directs that whether work is exempt or nonexempt "shall be construed in the same manner as such terms are construed in the following regulations under the Fair Labor Standards Act effective as of the date of this order: 29 C.F.R. Sections 541.201-205, 541.207-208, 541.210, and 541.215."[5] (Wage Order 4-2001, subd. 1(A)(2)(f).)

Like its predecessor, Wage Order 4-2001 exempts "persons employed in administrative, executive, or professional capacities." (Wage Order 4-2001, subd. 1(A).) Unlike its predecessor, subdivision 1(A)(2) of the new wage order describes the administrative exemption in some detail. It provides, in part, that persons are employed in an administrative capacity if their duties and responsibilities involve office or nonmanual work "*directly related to management policies or general business operations of* [*their*] *employer or* [*the*] *employer's customers.*" (Wage Order 4-2001, subd. 1(A)(2)(a)(i), italics added.)

Federal Regulations former part 541.205 (2000) is one of the regulations incorporated in Wage Order 4-2001, subdivision 1(A)(2)(f).[6] That regulation defined the

_____

[5] Regulations appearing in title 29 of the Code of Federal Regulations are hereafter referred to as " Federal Regulations." Citations to the Federal Regulations are as they existed on January 1, 2001, the effective date of Wage Order 4-2001. (Current regulations are found in Fed. Regs. § 541.203 (2011).)

[6] Federal Regulations former part 541.205 described when a claims adjuster's work is " 'directly related to management policies or general business operations.' " In pertinent part it provided:

"(a) The phrase 'directly related to management policies or general business operations of his employer or his employer's customers' describes those types of

8

activities relating to the administrative operations of a business as distinguished from 'production' or, in a retail or service establishment, 'sales' work. In addition to describing the types of activities, the phrase limits the exemption to persons who perform work of substantial importance to the management or operation of the business of his employer or his employer's customers.

"(b)   The administrative operations of the business include the work performed by so-called white-collar employees engaged in 'servicing' a business as, for example, advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control. An employee performing such work is engaged in activities relating to the administrative operations of the business notwithstanding that he is employed as an administrative assistant to an executive in the production department of the business.

"(c)   As used to describe work of substantial importance to the management or operation of the business, the phrase 'directly related to management policies or general business operations' is not limited to persons who participate in the formulation of management policies or in the operation of the business as a whole. Employees whose work is 'directly related' to management policies or to general business operations include those [whose] work affects policy or whose responsibility it is to execute or carry it out. The phrase also includes a wide variety of persons who either carry out major assignments in conducting the operations of the business, or whose work affects business operations to a substantial degree, even though their assignments are tasks related to the operation of a particular segment of the business.

"(1)   It is not possible to lay down specific rules that will indicate the precise point at which work becomes of substantial importance to the management or operation of a business. It should be clear that the cashier of a bank performs work at a responsible level and may therefore be said to be performing work directly related to management policies or general business operations. On the other hand, the bank teller does not. Likewise it is clear that bookkeepers, secretaries, and clerks of various kinds hold the run-of-the-[mill] positions in any ordinary business and are not performing work directly related to management policies or general business operations. On the other hand, a tax consultant employed either by an individual company or by a firm of consultants is ordinarily doing work of substantial importance to the management or operation of a business.

"(2)   An employee performing routine clerical duties obviously is not performing work of substantial importance to the management or operation of the business even though he may exercise some measure of discretion and judgment as to the manner in which he performs his clerical tasks. . . .

"(3)   Some firms employ persons whom they describe as 'statisticians.' If all such a person does, in effect, is to tabulate data, he is clearly not exempt. However, if such an employee makes analyses of data and draws conclusions which are important to

9

italicized phrase above. It is this "directly related" phrase that distinguishes between "administrative operations" and "production" or "sales" work. (Fed. Regs. § 541.205(a) (2000).)

Parsing the language of the regulation reveals that work qualifies as "administrative" when it is "*directly related*" to management policies or general business operations. Work qualifies as "directly related" if it satisfies two components. First, it must be *qualitatively* administrative. Second, *quantitatively*, it must be of substantial importance to the management or operations of the business. Both components must be satisfied before work can be considered "directly related" to management policies or general business operations in order to meet the test of the exemption. (Fed. Regs. § 541.205(a) (2000).)

---

the determination of, or which, in fact, determine financial, merchandising, or other policy, clearly he is doing work directly related to management policies or general business operations. . . .

"(4) Another example of an employee whose work may be important to the welfare of the business is a buyer of a particular article or equipment in an industrial plant or personnel commonly called assistant buyers in retail or service establishments. . . .

"(5) The test of 'directly related to management policies or general business operations' is also met by many persons employed as advisory specialists and consultants of various kinds, credit managers, safety directors, claim agents and adjusters, wage-rate analysts, tax experts, account executives of advertising agencies, customers' brokers in stock exchange firms, promotion men, and many others.

"(6) It should be noted in this connection that an employer's volume of activities may make it necessary to employ a number of employees in some of these categories. The fact that there are a number of other employees of the same employer carrying out assignments of the same relative importance or performing identical work does not affect the determination of whether they meet this test so long as the work of each such employee is of substantial importance to the management or operation of the business." (Fed. Regs. § 541.205(a)-(c) (2000).)

The regulation goes on to further explicate both components. Federal Regulations former part 541.205(b) discusses the qualitative requirement that the work must be administrative in nature. It explains that administrative operations include work done by "white collar" employees engaged in servicing a business. Such servicing may include, as potentially relevant here, advising management, planning, negotiating, and representing the company. Federal Regulations former part 541.205(c) relates to the quantitative component that tests whether work is of "substantial importance" to management policy or general business operations.

Read together, the applicable Labor Code statutes, wage orders, and incorporated federal regulations now provide an explicit and extensive framework for analyzing the administrative exemption.

**Trial Court and Court of Appeal Decisions**

As noted, plaintiffs moved for summary adjudication of defendants' affirmative defense that plaintiffs were exempt from overtime compensation requirements. The motion challenged whether plaintiffs' work met the test of the administrative exemption. Defendants opposed the motion and moved to decertify the class. A summary adjudication motion must completely dispose of the affirmative defense to which it is directed. (Code Civ. Proc., § 437c, subd. (f)(1); *North Coast Women's Care Medical Group, Inc. v. Superior Court* (2008) 44 Cal.4th 1145, 1160; *Hood v. Superior Court* (1995) 33 Cal.App.4th 319, 322-323.)

As explained, the test for the one element of the administrative exemption at issue here, the character of plaintiffs' duties, has both a qualitative and a quantitative component. Because the test is conjunctive, plaintiffs need only show that defendants cannot meet their burden as to either part of the test in order to succeed on their motion for summary adjudication. (See *Ramirez v. Yosemite Water Co.* (1999) 20 Cal.4th 785, 794-795.) Here, plaintiffs attacked defendants' showing as to the qualitative component, i.e, whether the work was administrative in nature. We limit our further discussion to

11

that question.  We express no opinion as to whether the record reveals a triable issue on the quantitative component of the test.

To argue that the test of the administrative exemption could not be met, plaintiffs placed great emphasis on the so-called administrative/production worker dichotomy. This dichotomy was applied by the court in the *Bell* cases.  As we explain, the Court of Appeal majority's overreliance on the *Bell* cases created much of the confusion here.  In order to understand why this is so, some discussion of both the administrative/production worker dichotomy and the court's reliance on it in the *Bell* cases is necessary.

In basic terms, the administrative/production worker dichotomy distinguishes between administrative employees who are primarily engaged in " 'administering the business affairs of the enterprise' " and production-level employees whose " 'primary duty is producing the commodity or commodities, whether goods or services, that the enterprise exists to produce and market.  [Citation.]' " (*Bell II*, *supra*, 87 Cal.App.4th at p. 821.)  Plaintiffs here contended that this concept was the touchstone for deciding whether they fell under the administrative exemption.

As discussed, the trial court decertified the class in part, depending on whether plaintiffs' claims arose before or after October 1, 2000, the date the IWC amended Wage Order 4-1998.  The trial court felt bound by the *Bell* cases, which interpreted Wage Order 4-1998.  In doing so, the *Bell* cases held that, under the provisions of Wage Order 4-1998, claims adjusters were nonexempt "production workers." (See *Bell II*, *supra*, 87 Cal.App.4th at p. 826.)  The trial court here decertified the class as to all claims arising after October 1, 2000, when Wage Order No. 4-2000 became effective.  (See *ante*, fn. 1.) The *Bell* cases had no occasion to consider Wage Order 4-2001.  We examine the *Bell* cases in some detail because the Court of Appeal relied so heavily upon them in construing Wage Order 4-2001.

The *Bell* litigation involved a class action suit based on an allegation that the plaintiffs were denied overtime compensation.  (*Bell II*, *supra*, 87 Cal.App.4th at p. 808.)

12

The plaintiffs were insurance claims representatives employed in a number of branch offices of Farmers Insurance Exchange (FIE). There was extensive information in the record about the nature of the plaintiffs' work and the way the business was structured.

In the first *Bell* case, the defendants sought review of the class certification order. That matter was dismissed on procedural grounds. (See *Bell III*, *supra*, 115 Cal.App.4th at p. 720.)

*Bell II* arose after the grant of summary adjudication in which the trial court determined that the claims representatives were not "administrators" and thus the administrative exemption contained in Wage Order 4-1998 was not applicable to the plaintiffs. (*Bell II*, *supra*, 87 Cal.App.4th at pp. 808-809.) That ruling was affirmed. (*Id.* at p. 821.)

*Bell III* was an appeal taken after a jury trial. As part of that appeal the defendants urged the court to reconsider its holding in *Bell II* in light of " '[r]ecent developments in federal law.' " (*Bell III*, *supra*, 115 Cal.App.4th at p. 727.) While concluding that actual reconsideration was precluded by the law of the case doctrine, the *Bell III* court addressed the defendants' criticism of *Bell II* at length. (*Bell III*, at pp. 727-739.) As a result, the *Bell III* court provided a judicial gloss to its earlier opinion in *Bell II*.

*Bell II* considered Wage Order 4–1998, subdivision 1(A) which directs that the overtime regulations shall not apply to those working in "administrative, executive, or professional capacities." Subdivision 1(A)(1) provided that no person may be considered to work in one of those capacities unless the work done "is primarily intellectual, managerial, or creative, . . . requires exercise of discretion and independent judgment," and is compensated at a given rate. As noted, the wage order itself did not provide any "independent meaning" for the term "administrative capacities." (*Bell II*, *supra*, 87 Cal.App.4th at p. 811.)

13

FIE argued that the scope of the administrative exemption, as it related to those plaintiffs, was defined exclusively by Wage Order 4-1998, subdivision 1(A)(1) and (2).[7] In rejecting this argument the court noted that the description of qualifying duties was "very brief" and could not "reasonably be considered . . . an adequate definition of the phrase 'administrative, executive, or professional capacities.' " (*Bell II*, *supra*, 87 Cal.App.4th at p. 811.)

In part, because of the brevity of treatment, the *Bell II* court concluded that it was reasonable to give the term "administrative capacity" an independent meaning beyond, and unlimited by, the description contained in Wage Order 4-1998, subdivision 1(A)(1). Thus, the court considered the term "administrative capacity" to describe the *role* of an employee in the business enterprise. It distinguished between that role and the *duties* of an employee as generally set out in subdivision 1(A)(1)—i.e., work that is "primarily intellectual, managerial, or creative, and which requires exercise of discretion and independent judgment." (See *Bell II*, *supra*, 87 Cal.App.4th at pp. 819-820.)

It is apparent that many of the same concepts now set out in Labor Code section 515, Wage Order 4-2001, and the incorporated federal regulations were also at play in *Bell II*. However, under the new statute and wage order, the way in which those concepts interrelate has been substantially clarified. The *Bell II* court did not have the benefit of these clarifications. As a result, the *Bell II* court was challenged to reach beyond the language of the enactments to resolve the thorny issue before it.

In essence, *Bell II* treated the analysis as a two-pronged inquiry, the first prong going to role and the second to duties. (See *Bell III*, *supra*, 115 Cal.App.4th at p. 736.) It

---

[7] Wage Order 4-1998, subdivision 1(A)(2) related to the professional aspect of the exemption and covered those practicing a profession like law or medicine. That subdivision obviously was not implicated in the *Bell* cases.

14

was in deducing the *role* denoted by the term "administrative capacity" that the *Bell II* court turned to the administrative/production worker dichotomy. (*Bell III*, at p. 729.) The *Bell II* court found the dichotomy a useful tool based on the state of the record before it and the wording of Wage Order 4-1998. Even so, the court noted that the dichotomy offers only a "broad distinction demanding further refinement in some cases." (*Bell II*, *supra*, 87 Cal.App.4th at p. 820.)

In reaching its conclusion, the *Bell II* court relied on the following undisputed facts. FIE did not sell insurance. It did, however, perform substantial claims-handling work for other related companies within the Farmers Insurance Group of Companies and was reimbursed for the cost of those services. FIE performed a specialized function within the broader corporate structure of the Farmers Insurance Group of Companies. As a result of the corporate structure, FIE was managed by another company, Farmers Group, Inc. Farmers Group, Inc., performed a large number of what would normally be considered administrative activities, including auditing, legal counseling, underwriting, and other matters not directly related to claims. Claims representatives had no formal advisory role in setting FIE's claims-handling policy. (*Bell II*, *supra*, 87 Cal.App.4th at pp. 823-824.)

The *Bell II* court concluded that, on its record, there were no triable issues of material fact supporting any conclusion other than that FIE's business was to handle claims. As a result, the adjusters fell squarely on the production side of the administrative/production worker dichotomy. (*Bell II*, *supra*, 87 Cal.App.4th at p. 826.)

The *Bell II* court went on to decide whether that conclusion supported a grant of summary adjudication. It acknowledged that the question was a complex one. It explicitly recognized the limitations of the dichotomy were it to be applied in other contexts: "the administrative/production worker dichotomy is a somewhat gross distortion that may not be dispositive in many cases." (*Bell II*, *supra*, 87 Cal.App.4th at p. 826.) Further, "some employees perform specialized functions within [a] business

15

organization that cannot readily be characterized in terms of the . . . dichotomy." (*Ibid*.) "Other employees perform jobs involving wide variations in responsibility that may call for finer distinctions than the . . . dichotomy provides." (*Id.* at p. 827.) It went on to note that claims adjusting illustrates the kind of work that may call for such a finer distinction, because a great variety of employees may be covered by such a job title. Some adjusters may do fairly routine work, while others may have expansive authority and their decisions may have substantial importance to the business of their employers. (*Ibid*.)

The *Bell II* court warned that in the absence of "detailed interpretative regulations" such as those at play in the federal cases, "California courts must use great caution in granting summary judgment or summary adjudication on the basis of such a broad distinction as the administrative/production worker dichotomy." (*Bell II*, *supra*, 87 Cal.App.4th at p. 827.)

The *Bell II* court concluded that summary adjudication was appropriate in light of its particular record. It noted that FIE had deliberately decided to structure its operations in a given manner. (*Bell II*, *supra*, 87 Cal.App.4th at p. 827.) The effect of that decision was to render the work of its claims representatives "routine and unimportant" in terms of its business impact, as the plaintiffs were merely producers of the product sold by the defendants. The settlement authority of claims representatives was set at a low level. (*Id.* at p. 828.) Conversely, when a decision involved "matters of greater importance" it was made by a supervisor, with the adjusters functioning merely as "investigators" or "conduits of information." (*Ibid.*) Because the FIE adjusters' *role* in the business was "routine and unimportant" they could not be considered administrative workers. (*Ibid.*)

Because the adjusters were not administrative workers due to their role, defendants could not satisfy the first prong of *Bell II*'s two-part test. As a result, the *Bell II* court concluded that it need not consider whether the plaintiffs' *duties* fell under the description set out in Wage Order 4–1998, subdivision 1(A)(1) of those whose work was "primarily intellectual, managerial, or creative," and "require[d] the exercise of discretion

16

and independent judgment." The court was careful to point out that its separate determination as to the plaintiffs' role in FIE's business disposed of that case but recognized that in other cases careful analysis of employees' duties might be necessary to determine whether their status was exempt or not. (*Bell II*, *supra*, 87 Cal.App.4th at p. 829.) As the *Bell III* court noted, "our opinion in *Bell II* was based on the restricted record before us and cannot be read out of that context." (*Bell III, supra,* 115 Cal.App.4th at p. 730.)

The *Bell* cases are distinguishable from this case in two important ways. First, those opinions carefully limited their holdings to their facts, including the defendants' stipulation that the work performed by all plaintiffs was "routine and unimportant." In light of the stipulation, there was no dispute that the plaintiffs' work placed them on the production side of the administrative/production worker dichotomy. (*Bell II*, *supra*, 87 Cal.App.4th at p. 826.) In so concluding, the *Bell II* court effectively conflated the qualitative and quantitative aspects of the "directly related" test now set out in Wage Order 4-2001 and amplified in Federal Regulations former part 541.205(a), (b), and (c). (See *ante*, at pp. 7-11.)

Second, because Wage Order 4-1998 did not provide sufficient guidance, the *Bell II* court looked beyond the language of the wage order and employed the administrative/production worker dichotomy as an analytical tool. The whole approach in *Bell II* rested on the conclusion that Wage Order 4-1998 failed to provide a sufficient explanation of the extent of the administrative exemption. (*Combs v. Skyriver Communications* (2008) 159 Cal.App.4th 1242, 1260 (*Combs*).) By comparison, Wage Order 4-2001, the operative order here, along with the incorporated federal regulations, set out detailed guidance on the question.

In concluding that plaintiffs were not exempt administrative employees, the Court of Appeal majority placed substantial reliance on the *Bell* cases. It was unpersuaded by defendants' argument that *Bell II* is distinguishable because there FIE had conceded that

17

its claims adjusters' duties were "routine and unimportant." (*Bell II*, *supra*, 87 Cal.App.4th at p. 828.) The majority here stated, "We agree that defendants have introduced substantial evidence that plaintiffs' work is not routine and unimportant, and that *Bell II* is distinguishable on that ground. But the fact remains that plaintiffs' work — investigating claims, determining coverage, setting reserves, etc. — is not carried on at the level of policy or general operations, so it falls on the production side of the dichotomy. Not all production work is routine or unimportant."

The Court of Appeal majority was correct in noting that *Bell II* is distinguishable. It erred when it relied on distinguishable authority to create a rigid rule, an outcome even the *Bell* cases cautioned against. The majority below did acknowledge new Wage Order 4-2001 and some of the applicable federal regulations. It did not, however, consider all of the relevant aspects of Federal Regulations former part 541.205, specifically subpart (b). Instead, it reached out for support to other federal regulations not incorporated in Wage Order 4-2001.

The majority below focused on Federal Regulations former part 541.205(a), concluding that "only work performed at the level of *policy* or *general* operations can qualify as 'directly related to management policies or general business operations.' In contrast, work that merely carries out the particular day-to-day operations of the business is production, not administrative, work. That is the administrative/production worker dichotomy, properly understood. [Fn. omitted.]"

The majority below provided its own gloss to the administrative/production worker dichotomy and used it, rather than applying the language of the relevant wage order and regulations. Such an approach fails to recognize that the dichotomy is a judicially created creature of the common law which has been effectively superseded in this context by the more specific and detailed statutory and regulatory enactments.

While it bolstered its conclusion by citing Federal Regulations former part 541.205(a), the majority failed to adequately consider other subparts of that regulation.

18

Such an approach violates the long-standing rule of construction that an enactment is to be read as a whole and that interpretations are to be avoided if they render part of an enactment nugatory. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735; *McLaughlin v. State Bd. of Education* (1999) 75 Cal.App.4th 196, 211.)

As discussed above (see *ante*, at pp. 8-11), Federal Regulations former part 541.205(a), (b), and (c) must be read together in order to apply the "directly related" test and properly determine whether the work at issue satisfies the administrative exemption. For example, former part 541.205(b) supplied a general description of the types of duties that constitute "administrative operations of the business." It included work performed by "white-collar employees engaged in 'servicing' a business as, for example, advising the management, planning, negotiating, [and] representing the company." The dissent below argued, "That is what claims adjusters do—they negotiate settlements (and conclude some without seeking approval), advise management, and process claims." The incorporation of former part 541.205(b) shows that whether work is part of the "administrative operations" of a business depends, in part, on whether it involves advising management, planning, negotiating, and representing the company. It is not so narrowly limited as the majority below declared.

The Court of Appeal also cited *Bratt v. County of Los Angeles* (9th Cir. 1990) 912 F.2d 1066 (*Bratt*) in support of its holding. *Bratt* held that under the federal Fair Labor Standards Act, the administrative exemption does not apply to probation officers, stating, "[T]he test is whether the activities are directly related to *management policies* or *general business operations*. . . . [¶] . . . [W]hile the regulations provide that 'servicing' a business may be administrative, . . . § 541.205(b), 'advising the management' as used in that subsection is directed at advice on matters that involve policy determinations, i.e., how a business should be run or run more efficiently, not merely providing information in the course of the customer's daily business operation." (*Bratt*, at p. 1070.)

19

Applying *Bratt* to this case, the majority below reasoned that "although advising management *about the formulation of policy* is exempt administrative work, advising management *about the settlement of an individual claim* is not." The majority held that plaintiffs' duties here are "not carried on at the level of policy or general operations."

*Bratt*'s persuasiveness is in doubt. The Ninth Circuit has subsequently held that under more recent applicable federal regulations, claims adjusters are exempt from the Fair Labor Standards Act's overtime requirements "if they perform activities such as interviewing witnesses, making recommendations regarding coverage and value of claims, determining fault and negotiating settlements." (*Miller v. Farmers Ins. Exch.* (*In Re Farmers Ins. Exch.*) (9th Cir. 2007) 481 F.3d 1119, 1124.)[8] In addition, *Bratt* involved probation officers, not claims adjusters. The *Bratt* court concluded that the probation officers were more like inspectors who merely supply information: "[A]lthough probation officers provide recommendations to the courts, these recommendations do not involve advice on the proper way to conduct the business of the court, but merely provide information which the court uses in the course of its daily production activities." (*Bratt*, *supra*, 912 F.2d at p. 1070.)

The analysis in *Bratt* highlights the difficulty in relying on the particular role of employees in one enterprise to deduce a rule applicable to another kind of business. It also reveals the limitations of the administrative/production worker dichotomy itself as an

[8] We note that many federal courts are in accord with this conclusion. (See *Smith v. Government Employees Ins. Co.* (D.C. Cir. 2010) 590 F.3d 886, 897; *Roe-Midgett v. CC Services, Inc.* (7th Cir. 2008) 512 F.3d 865, 875; *Cheatham v. Allstate Ins. Co.* (5th Cir. 2006) 465 F.3d 578, 585-586; *McAllister v. Transamerica Occidental Life Ins. Co.* (8th Cir. 2003) 325 F.3d 997, 998, 1001; *Jastremski v. Safeco Ins. Companies* (N.D. Ohio 2003) 243 F.Supp.2d 743, 753; *Palacio v. Progressive Ins. Co.* (C.D.Cal. 2002) 244 F.Supp.2d 1040, 1045, 1047.) These cases are instructive because the regulations enacted by the United States Department of Labor after Wage Order 4-2001 were intended to be consistent with the old regulations. (See, e.g., *Miller v. Farmers Ins. Exch.* (*In Re Farmers Ins. Exch.*), *supra*, 481 F.3d at pp. 1128-1129.)

analytical tool.  As the dissent below points out, "[B]ecause the dichotomy suggests a distinction between the administration of a business on the one hand, and the 'production' end on the other, courts often strain to fit the operations of modern-day post-industrial service-oriented businesses into the analytical framework formulated in the industrial climate of the late 1940's."

The Court of Appeal majority also sought to bolster its conclusion by observing: "[U]nder the [federal Fair Labor Standards Act], employees whose duties 'necessitate irregular hours of work' may enter contracts with their employers guaranteeing constant pay for varying workweeks that might otherwise violate the maximum hour requirements of the statute. [Citation.]"  It then referred to Federal Regulations part 778.405, which lists "insurance adjusters" as employees who are eligible to enter into the varying workweek contracts permitted by the Fair Labor Standards Act.  The majority reasoned that, by implication, plaintiffs are nonexempt employees, "otherwise, the provision concerning varying-workweek contracts would have nothing to do with them."  The implication is unwarranted.  The IWC Statement issued in connection with Wage Order 4-2001 clearly states that *"only* those federal regulations specifically cited in its wage orders, and in effect at the time of promulgation" shall be applied in defining exempt duties under California law.  (Italics added.)  Federal Regulations part 778.405 is not listed, and was thus not incorporated by the IWC for the purposes of construing the wage order.

Defendants also argue that the Court of Appeal improperly relied on opinion letters issued in 1998 and 2003 by the Division of Labor Standards Enforcement (DLSE), the state agency that enforces IWC orders.  Although we generally give DLSE opinion letters "consideration and respect," it is ultimately the judiciary's role to construe the language. (Compare *Murphy v. Kenneth Cole Productions, Inc.* (2007) 40 Cal.4th 1094, 1105, fn. 7 with *Tidewater Marine Western, Inc. v. Bradshaw* (1996) 14 Cal.4th 557, 576.)  The 1998 letter applies the administrative/production worker dichotomy and concludes that

21

claims adjusters described by the *Bell* plaintiffs' attorneys were not exempt. The 2003 letter states that the *Bell II* analysis of the dichotomy is still viable after the IWC's adoption of Wage Order 4-2001. Our decision is not inconsistent with these letters. We do not hold that the administrative/production worker dichotomy was misapplied to the *Bell II* plaintiffs, based on the record in that case, or that the dichotomy can never be used as an analytical tool. We merely hold that the Court of Appeal improperly applied the administrative/production worker dichotomy as a dispositive test.

The essence of our holding is that, in resolving whether work qualifies as administrative, courts must consider the particular facts before them and apply the language of the statutes and wage orders at issue. Only if those sources fail to provide adequate guidance, as was the case in *Bell II*, is it appropriate to reach out to other sources.

We express no opinion on the strength of the parties' relative positions. We merely hold that the Court of Appeal majority erred in its analysis.[9]

---

[9] Defendants contend that if the Court of Appeal erred, this court should decertify the class in its entirety. In light of our limited ruling, we decline to decertify the class. However, defendants are free to raise the issue on remand.

## DISPOSITION

We reverse the judgment of the Court of Appeal and remand with directions that it review the trial court's denial of the summary adjudication motion, applying the appropriate legal standard set out herein.

**CORRIGAN, J.**

**WE CONCUR:**

**CANTIL-SAKAUYE, C. J.**
**KENNARD, J.**
**BAXTER, J.**
**WERDEGAR, J.**
**CHIN, J.**
**LIU, J.**

*See last page for addresses and telephone numbers for counsel who argued in Supreme Court.*

**Name of Opinion** Harris et al. v. Superior Court

_____

**Unpublished Opinion**
**Original Appeal**
**Original Proceeding**
**Review Granted**
**Rehearing Granted** XXX 154 Cal.App.4th 164

_____

**Opinion No.** S156555
**Date Filed:** December 29, 2011

_____

**Court:** Superior
**County:** Los Angeles
**Judge:** Carolyn B. Kuhl

_____

**Counsel:**

Lerach Coughlin Stoia Geller Rudman & Robbins, Coughlin Stoia Gellar Rudman & Robbins, Patrick J. Coughlin, Theodore J. Pintar, Steven W. Pepich, Kevin K. Green, Steven M. Jodlowski; Cohelan & Khoury, Cohelan Khoury & Singer, Timothy D. Cohelan, Isam C. Khoury, Michael D. Singer; Spiro, Moss, Barness & Harrison, Spiro Moss Barness, Dennis F. Moss, Ira Spiro; Law Offices of Michael I. Carver and Michael I. Carver for Petitioners and Real Parties in Interest Frances Harris, Dwayne Garner, Marion Brenish-Smith, Steven Brickman, Kelly Gray, Adell Butler-Mitchell and Lisa McCauley.

Arbogast & Berns and David M. Arbogast for Consumer Attorneys of California as Amicus Curiae on behalf of Petitioners and Real Parties in Interest Frances Harris, Dwayne Garner, Marion Brenish-Smith, Steven Brickman, Kelly Gray, Adell Butler-Mitchell and Lisa McCauley.

Hud Collins as Amicus Curiae on behalf of Petitioners and Real Parties in Interest Frances Harris, Dwayne Garner, Marion Brenish-Smith, Steven Brickman, Kelly Gray, Adell Butler-Mitchell and Lisa McCauley.

Rudy, Exelrod & Zieff, Rudy, Exelrod, Zieff & Lowe and Kenneth J. Sugarman for California Employment Lawyers Association as Amicus Curiae on behalf of Petitioners and Real Parties in Interest Frances Harris, Dwayne Garner, Marion Brenish-Smith, Steven Brickman, Kelly Gray, Adell Butler-Mitchell and Lisa McCauley.

Sidley Austin, Douglas R. Hart, Geoffrey D. Deboskey; Sheppard Mullin Richter & Hampton, Robert J. Stumpf, William V. Whelan and Karin Dougan Vogel for Petitioners and Real Parties in Interest Liberty Mutual Insurance Company and Golden Eagle Insurance Corporation.

Leland Chan for California Bankers Association as Amicus Curiae on behalf of Petitioners and Real Parties in Interest Liberty Mutual Insurance Company and Golden Eagle Insurance Corporation.

Winston & Strawn, Lee T. Paterson and Audrey Shen Chui for Employers Group as Amicus Curiae on behalf of Petitioners and Real Parties in Interest Liberty Mutual Insurance Company and Golden Eagle Insurance Corporation.

**Page 2 – S15655 – counsel continued:**

**Counsel:**

Gregory F. Jacob, Steven J. Mandel, Paul L. Frieden and Joanna Hull for the Secretary of Labor, U.S. Department of Labor as Amicus Curiae on behalf of Petitioners and Real Parties in Interest Liberty Mutual Insurance Company and Golden Eagle Insurance Corporation.

Sonnenschein Nath & Rosenthal, Paul E. B. Glad, Gayle M. Athanacio and Virginia K. Young for Association of California Insurance Companies, Personal Insurance Federation of California and Pacific Association of Domestic Insurance Companies as Amici Curiae on behalf of Petitioners and Real Parties in Interest Liberty Mutual Insurance Company and Golden Eagle Insurance Corporation.

National Chamber Litigation Center Inc., Robin S. Conrad; Mayer Brown and Donald M. Falk for Chamber of Commerce of the United States of America as Amicus Curiae on behalf of Petitioners and Real Parties in Interest Liberty Mutual Insurance Company and Golden Eagle Insurance Corporation.

Berger Kahn and Teresa R. Tracy for Progressive Casualty Insurance Company as Amicus Curiae on behalf of Petitioners and Real Parties in Interest Liberty Mutual Insurance Company and Golden Eagle Insurance Corporation.

Bien & Summers, Elliot L. Bien and Catherine S. Meulemans for American Insurance Association as Amicus Curiae on behalf of Petitioners and Real Parties in Interest Liberty Mutual Insurance Company and Golden Eagle Insurance Corporation.

Seyfarth Shaw, George Preonas, Michael D. Mandel and Gilmore F. Diekmann, Jr., for California Employment Law Council as Amicus Curiae on behalf of Petitioners and Real Parties in Interest Liberty Mutual Insurance Company and Golden Eagle Insurance Corporation.

No appearance for Respondent.

**Counsel who argued in Supreme Court (not intended for publication with opinion):**

Patrick J. Coughlin
Coughlin Stoia Gellar Rudman & Robbins
655 West Broadway, Suite 1900
San Diego, CA  92101
(619) 231-1058

Douglas R. Hart
Sidley Austin
555 West Fifth Street, Suite 4000
Los Angeles, CA  90013
(213) 896-6122