Filed 4/27/16; pub. order 5/26/16 (see end of opn.)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>      Plaintiff and Respondent,<br><br>v.<br><br>DAVID ELIJAH YOUNG,<br><br>      Defendant and Appellant. | A143082<br><br>(Contra Costa County Super. Ct. No. 051403286) |

      Defendant David Elijah Young appeals from the trial court's denial of his motion to suppress evidence obtained in a warrantless search of his home and to dismiss the child pornography possession case filed against him. He argues the search was unlawful because the county probation department's postrelease community supervision of him had terminated the day before the search as a matter of law, pursuant to the terms of Penal Code section 3456.[1] We disagree and affirm the trial court's ruling.

## BACKGROUND

      The record indicates that on May 14, 2012, defendant was released from prison and placed on postrelease community supervision pursuant to the Postrelease Community Supervision Act of 2011, codified as section 3450 et seq. (Act). He was supervised by a deputy probation officer, Alex Concepcion, of Contra Costa County's probation department. As conditions of defendant's supervision, he was subject to

---

      [1] All statutory references herein are to the Penal Code.

1

warrantless searches of his person and possessions and prohibited from possessing pornographic material.

In February 2014, the Contra Costa County District Attorney filed an information in which he charged defendant with possession of child pornography with a prior conviction (§ 311.11, subd. (b)). The district attorney also alleged defendant was subject to certain sentence enhancements.[2]

Defendant pled not guilty and denied the enhancement allegations. He then moved before the trial court pursuant to sections 1538.5 and 995 to suppress evidence and dismiss the information. Among other things, he argued the evidence against him was obtained as the result of an unlawful warrantless search of his home by Concepcion and police one day after the department's postrelease community supervision powers over him had terminated.

At the subsequent suppression hearing, evidence was presented that about two weeks before the search of defendant's home, Concord Police Department Detective Tamra Roberts contacted Concepcion and requested permission to search defendant's home pursuant to the conditions of his postrelease community supervision. Roberts had received information that defendant was chatting on-line with teenage girls about sexual matters. The search was approved, but, because of scheduling conflicts, Concepcion and the police did not search defendant's home until May 15, 2013, a year and one day after defendant was placed on postrelease community supervision.

Evidence further indicated that in the course of this search, Concepcion and the officers found a laptop computer and a computer tower in defendant's bedroom. The laptop contained a video depicting what appeared to Detective Roberts to be "underage girls performing sexual acts." Defendant was arrested and taken to the police station, where, after being advised of his constitutional rights, he admitted receiving pictures

---

[2] The district attorney had previously filed a three count felony complaint against defendant; defendant had moved at his preliminary hearing to suppress all evidence obtained as a result of the same warrantless search of his home that is the subject of this appeal, which motion the court denied; and the court had dismissed two of the counts in the complaint.

2

via email depicting girls five to eight years of age posing naked and in lewd positions, and that some of the pictures also depicted adult penises.

An expert in computer forensics related to child pornography examined the laptop and tower computers pursuant to a warrant. On the laptop, he found the previously discovered video, as well as what appeared to be images of child pornography in unallocated spaces that had been occupied by deleted data. The expert was unable to determine when these images were placed on the computer, accessed or deleted.

Concepcion testified that the county probation department's supervision of a person such as defendant could last for up to three years, but after one year, if the person had no violations, the department would begin the process of "closing" the case and was required to discharge the person from supervision within 30 days.[3] A county probation officer would review the person's records to assess whether discharge was appropriate and would submit this assessment to a supervisor who, when appropriate, would transmit it to the probation department's clerk for formal discharge.

As far as Concepcion knew, defendant did not have any violations during his first year on postrelease community supervision. Concepcion had not begun assessing defendant's eligibility for discharge at the time that police and he searched defendant's home.

The court denied defendant's suppression motion based in part on its review of the relevant statute, section 3456, which, as we will discuss, provides that a person shall be discharged 30 days after he or she successfully completes a one-year term on postrelease community supervision. The court concluded that it was "obvious from the language itself in its unambiguous terms that the 30-day window is a continuing window of continued supervision in which the parole terms and conditions, including search and seizure, and the prohibition on possession of pornography applies."

---

[3] Concepcion said the department could also discharge a person after six months, but defendant was not eligible for such a discharge under the department's policies because he was required to register as a sex offender under section 290.

3

Defendant sought a writ of mandate from this court, which we denied. Subsequently, pursuant to a plea agreement, he pled no contest to violating section 311.11, subdivision (b). The court dismissed the enhancement allegations, sentenced defendant to a low term of two years in state prison and awarded him actual and conduct credits totaling 836 days. Defendant filed a timely notice of appeal based on the denial of his suppression motion. While this appeal was pending, defendant requested that we take judicial notice of certain legislative history. We hereby grant this request.

## DISCUSSION

Defendant asserts that the trial court should have granted his suppression motion because authorities searched his home without a warrant one day after the termination of their authority to do so, as indicated by section 3456. We disagree with his interpretation of section 3456 and conclude authorities had the legal authority to search his home.

Defendant argues a question of statutory interpretation and not of fact. Accordingly, we independently review his argument to determine whether, as a matter of law, the authorities engaged in acts constituting an unreasonable search and/or seizure. (See *People v. Ayala* (2000) 23 Cal.4th 225, 255.)

" 'In construing statutes, we aim "to ascertain the intent of the enacting legislative body so that we may adopt the construction that best effectuates the purpose of the law." [Citations.] We look first to the words of the statute, "because the statutory language is generally the most reliable indicator of legislative intent." [Citations.] [¶] When the statutory text is ambiguous, or it otherwise fails to resolve the question of its intended meaning, courts look to the statute's legislative history and the historical circumstances behind its enactment. [Citation.] Finally, the court may consider the likely effects of a proposed interpretation because ' "[w]here uncertainty exists consideration should be given to the consequences that will flow from a particular interpretation." ' [Citation.] 'The intent prevails over the letter, and the letter will, if possible be so read as to conform to the spirit of the act.' " (*People v. Nelson* (2011) 200 Cal.App.4th 1083, 1097.)

4

Furthermore, " '[i]n the first step of the interpretative process we look to the words of the statute themselves. [Citations.] The Legislature's chosen language is the most reliable indicator of its intent because ' "it is the language of the statute itself that has successfully braved the legislative gauntlet." ' [Citation.] We give the words of the statute "a plain and commonsense meaning" unless the statute specifically defines the words to give them a special meaning. [Citations.] If the statutory language is clear and unambiguous, our task is at an end, for there is no need for judicial construction. . . .

" 'Nevertheless, the "plain meaning" rule does not prevent a court from determining whether the literal meaning of the statute comports with its purpose. [Citations.] Thus, although the words used by the Legislature are the most useful guide to its intent, we do not view the language of the statute in isolation. [Citation.] Rather, we construe the words of the statute in context, keeping in mind the statutory purpose. [Citation.] We will not follow the plain meaning of the statute "when to do so would 'frustrate[] the manifest purposes of the legislation as a whole or [lead] to absurd results.' " [Citation.] Instead, we will " 'interpret legislation reasonably and . . . attempt to give effect to the apparent purpose of the statute. ' " ' " (*People v. Nelson*, *supra*, 200 Cal.App.4th at pp. 1097–1098.)

Further, "an enactment is to be read as a whole." (*Harris v. Superior Court* (2012) 53 Cal.4th 170, 188.) In other words, "[l]egislative intent must be gleaned from the whole act rather than from isolated words." (*Building Industry Assn. v. City of Camarillo* (1986) 41 Cal.3d 810, 819.)

With these statutory interpretation rules in mind, we turn to the language of the Act. It was enacted "to improve public safety outcomes" and facilitate certain offenders' "successful reintegration back into society." (§ 3450, subd. (b)(5); see *People v. Espinoza* (2014) 226 Cal.App.4th 635, 641.) Low-level offenders released from prison are subject to community supervision provided by the probation department of the county to which the person is being released according to a postrelease strategy developed by each county's board of supervisors. (§ 3451,

subds. (a), (c)(1).) Unless his or her supervision is tolled for reasons not relevant here, "[a] person shall not remain under supervision . . . on or after three years from the date of the person's initial entry onto postrelease community supervision . . . ." (§ 3455, subd. (e).)

The Act provides for numerous mandatory conditions of postrelease community supervision, including that "[t]he person, and his or her residence and possessions, shall be subject to search at any time of the day or night, with or without a warrant, by an agent of the supervising county agency or by a peace officer." (§ 3453, subd. (f).) The local supervising county agency "shall establish a review process for assessing and refining a person's program of postrelease supervision," and "may determine additional appropriate conditions of supervision listed in Section 3453 consistent with public safety." (§ 3454, subds. (a), (b).)

"At any time during the period of postrelease community supervision, if a peace officer has probable cause to believe a person subject to postrelease community supervision is violating any term or condition of his or her release, the officer may, without a warrant or other process, arrest the person and bring him or her before the supervising county agency . . . ." (§ 3455, subd. b(1).) Further, the supervising agency may, following application of its assessment processes, "petition the court . . . to revoke, modify, or terminate postrelease community supervision. . . . Upon a finding that the person has violated the conditions of postrelease community supervision," the revocation hearing officer may, among other things, "[r]eturn the person to postrelease community supervision with modifications of conditions, if appropriate, including a period of incarceration in county jail" and "[r]evoke and terminate postrelease community supervision and order the person to confinement in county jail." (§ 3455, subd. (a)(1), (2).)

Section 3456 provides for the termination of postrelease supervision after three years, six months and one year as follows:

"(a) The county agency responsible for postrelease supervision . . . shall maintain postrelease supervision over a person . . . until one of the following events occurs:

"(1) The person has been subject to postrelease supervision pursuant to this title for three years at which time the offender shall be immediately discharged from postrelease supervision.

"(2) Any person on postrelease supervision for six consecutive months with no violations of his or her conditions of postrelease supervision that result in a custodial sanction may be considered for immediate discharge by the supervising county.

"(3) The person who has been on postrelease supervision continuously for one year with no violations of his or her conditions of postrelease supervision that result in a custodial sanction shall be discharged from supervision within 30 days."

Defendant does not dispute for the purposes of this appeal that there was probable cause to arrest him as a result of the warrantless search of his home. Instead, he contends that the authorities had no authority to conduct this warrantless search in the first place because the search occurred a year *and one day* after he had been placed on postrelease community supervision, which year he had completed without violating his conditions. Therefore, pursuant to section 3456, the actual authority to supervise him had ended the day before the search and the authorities' warrantless search of his home was unlawful.

Defendant's interpretation of section 3456 cannot withstand even a brief review of the statute. The plain and unambiguous language of section 3456, subdivision (a)(3) states that after a person successfully completes one year of postrelease community supervision, the supervising agency "shall" discharge the person from supervision at some point within the next 30 days. The statute does not require the agency to discharge the person on any particular date prior to the expiration of this 30-day period; it requires only that discharge occur some time within that period. Until the discharge actually occurs, the agency "shall maintain postrelease

7

community supervision." (§ 3456, subd. (a).) The language of the statute is unambiguous.

Defendant argues that because section 3456, subdivision (a) begins with the statement that the "county agency responsible for postrelease supervision . . . shall maintain postrelease supervision over a person . . . *until one of the following events occurs*" (italics added), and because section 3456, subdivision (a)(3) refers to the "person who has been on postrelease supervision continuously for one year with no violations," the relevant "event" in subdivision (a)(3) is this one-year time period, which automatically triggers termination of supervision. The language of subdivision (a)(3) does not support this interpretation. The relevant "event" is, as the subdivision makes clear, the person's "discharge[] from supervision" within 30 days of the end of this one-year period. Only then does the agency cease to "maintain postrelease supervision."

Further, defendant's interpretation makes no sense. Section 3456, subdivision (a)(1) provides for immediate discharge when a person has been subject to postrelease supervision for three years. Obviously, in addressing the earlier discharge 30 days after one year that is outlined in section 3456, subdivision (a)(3), the Legislature intended something other than immediate discharge. Otherwise, there would be no reason for providing the 30-day window in which the agency is to act. Also, defendant's interpretation would end supervision over a person who could then violate the conditions of supervision during the subsequent 30-day period without fearing detection that might occur via supervision, thereby creating an increased risk to public safety. Such an interpretation is directly contrary to the purposes of the Act, which, as we have discussed, include "to improve public safety outcomes" among adult felon parolees. (§ 3450, subd. (b)(5).)

Defendant contends that our interpretation, and the trial court's, essentially creates a 13-month period of supervision rather than one year, rendering the reference in section 3456, subdivision (a)(3) to "one year" superfluous. (See *Klein v. United States* (2010) 50 Cal.4th 68, 80 ["courts must strive to give meaning to every word in

8

a statute and to avoid constructions that render words, phrases, or clauses superfluous"].)  We disagree.  The Act provides that a person's successful completion of a one-year period triggers not necessarily immediate discharge (as occurs at the end of three years) nor the agency option to discharge (as occurs at the successful completion of a six-month period); rather, while it may trigger immediate discharge, it may also trigger an assessment by the agency of a person's conduct and gives the agency time to either seek from the court a modification or revocation of supervision, or discharge the person.  This makes eminent sense.

Defendant also contends the supervising agency has an additional 30 days to discharge a person after one year merely to allow time for the administrative processing of this discharge and may no longer assert its supervisory powers during this period of time.  Defendant points to nothing in the Act to support this interpretation, nor do we find any in our own review of it.  To the contrary, reviewing the Act as a whole, it is apparent that the agency may during this 30-day period of time seek the modification or revocation of supervision by the court, such as for the reasons indicated in this case:  the discovery during this 30-day period that the person has violated conditions of his supervision and is subject to arrest.

In light of our conclusion herein, we need not discuss the other arguments raised by the parties.

## DISPOSITION

The judgment is affirmed.

_____
STEWART, J.

We concur.


_____
RICHMAN, Acting P.J.


_____
MILLER, J.


*People v. Young* (A143082)

10

Filed 5/26/16

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DAVID ELIJAH YOUNG,<br><br>    Defendant and Appellant. | A143082<br><br>(Contra Costa County<br>Super. Ct. No. 051403286)<br><br>**ORDER CERTIFYING OPINION<br> FOR PUBLICATION** |

**BY THE COURT:**

The opinion in the above-entitled matter filed on April 27, 2016, was not certiffed for publication in the Official Reports.  For good cause and pursuant to California Rules of Court, rule 8.1105, it now appears that the opinion should be published in the Official Reports, and it is so ordered.

Dated: _____          _____

                                                                          Kline, P.J.

1

Trial Court:   Contra Costa County Superior Court

Trial Judge:   Hon. Terri A. Mockler

Counsel:

Theresa Osterman Stevenson, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Jeffrey M. Laurence, Acting Senior Assistant Attorney General, Eric D. Share, Supervising Deputy Attorney General, Ronald E. Niver, Deputy Attorney General, for Plaintiff and Respondent.