[No. A078967. First Dist., Div. Five. July 10, 1998.]

SEYMOUR BLOCK, Plaintiff and Appellant, v.
MAJOR LEAGUE BASEBALL et al., Defendants and Respondents.

## Counsel

Coudert Brothers, Ronald S. Katz, Donald L. Bartels, Gary L. Benton, William N. Hebert and Jeffrey G. Benz for Plaintiff and Appellant.

Howard, Rice, Nemerovski, Canady, Falk & Rabkin, Martin R. Glick, Bernard A. Burk, Rosemary S. Tarlton, Elizabeth W. Scott, Jeffrey E. Faucette, Fein & Jakab and Peter Jakab for Defendants and Respondents.

## Opinion

**PETERSON, P. J.**—Seymour Block appeals from an order denying his motion to certify as a class action his lawsuit against Major League Baseball, Major League Baseball Properties, Inc., the PHoenix Communications Group, Inc., and Photo File, Inc.[1] Block contends the trial court misapplied the rules that govern certification when denying his motion. We disagree and will affirm the order.

---

[1]The parties have stipulated that Major League Baseball exists as a separate entity for purposes of this action.

Major League Baseball Properties, Inc., is a New York corporation that is the licensing agent of the baseball clubs in the American and National Leagues.

The PHoenix Communications Group, Inc., is a New Jersey corporation that is authorized by Major League Baseball Properties, Inc., to produce and distribute audiovisual programs containing game performances and related activities.

Photo File, Inc., is a New York corporation that sells photographs of current and retired major league baseball players.

Unless the context requires otherwise, we will refer to the defendants collectively as Baseball.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Block played major league baseball for the Chicago Cubs for a total of 17 games between 1942 and 1946. In July 1996, Block and four other men,[2] all of whom played major league baseball prior to 1947, filed a class action complaint against Baseball alleging it had violated their statutory and common law right of publicity by using their "names, voices, signatures, photographs and/or likenesses" on products such as "books, films, trading cards, collector merchandise, memorabilia, and apparel" without their consent and without compensation.[3] The complaint sought damages for the unauthorized use, an injunction ceasing such use in the future, and a declaration that all members of the class were entitled to exploit commercially their own image in the uniform in which they played.

After what appears to have been extensive discovery, the plaintiffs filed a motion for class certification. They proposed a class of about 800 persons consisting of "all major league baseball players who played major league baseball before 1947, or, if they are now deceased, their heirs or beneficiaries." In addition, the plaintiffs clarified that they sought damages only for unauthorized uses that had occurred in California, and only for uses that had occurred since 1992.

Baseball opposed the motion arguing that certification was inappropriate because of the enormous variation between the types of claims involved. Baseball noted that some members of the proposed class were Hall of Fame players who were the subject of numerous allegedly unauthorized uses, while others were virtually unknown to all but the most avid historians of the game. Baseball argued that given this variation, and the consequent difficulty in proving claims and calculating damages for the individual class members, the class should not be certified.

The trial court agreed and denied the motion, ruling that "In view of the diverse factual and legal issues to be resolved . . . , it appears to the court that if certified as a class action this action would in fact become one of multiple lawsuits separately tried. Under these circumstances the court

---

[2]The other named plaintiffs were Peter J. (Pete) Coscarart, who played for the Brooklyn Dodgers and the Pittsburgh Pirates; Adolph L. (Dolph) Camilli who played for the Chicago Cubs, the Philadelphia Phillies, the Brooklyn Dodgers, and the Boston Red Sox; Frank P. (Frankie) Crosetti, who played for the New York Yankees; and Albert F. (Al) Gionfriddo, who played for the Pittsburgh Pirates and the Brooklyn Dodgers.

[3]The class was limited to men who played prior to 1947, because that year the standard player contract was revised to add the following language: "The Player agrees that his picture may be taken for still photographs, motion pictures or television at such times as the Club may designate and agrees that all rights in such pictures shall belong to the Club and may be used by the Club for publicity purposes in any manner it desires."

concludes that treating this action as a class action will not be advantageous to the judicial process and to the litigants themselves."

This appeal followed.[4]

II. DISCUSSION

■ Block contends the trial court erred when it denied his motion for class certification.

Code of Civil Procedure section 382 authorizes class action lawsuits "when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . ."

■ In order to maintain a class action, a plaintiff must establish that two prerequisites have been met: "the existence of an ascertainable class and a well-defined community of interest among the class members. [Citation.] The community of interest requirement embodies three factors: (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class." (*Richmond* v. *Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 [174 Cal.Rptr. 515, 629 P.2d 23] (*Richmond*).)

■ . Here, the trial court ruled (and neither party disputes) that there was an ascertainable class, i.e., approximately 800 men (or their heirs and beneficiaries) who played major league baseball prior to 1947. Furthermore, the court ruled (and again the parties do not dispute) that the original class representatives could represent the proposed class adequately and that they were asserting claims that were typical. The pivotal point of dispute in this case was the final community of interest requirement, i.e., whether common questions of law or fact predominated.

■ The legal principles that govern this particular factor are settled. Although class actions are favored, one "will not be permitted . . . where there are diverse factual issues to be resolved, even though there may be many common questions of law." (*Brown* v. *Regents of University of California* (1984) 151 Cal.App.3d 982, 988-989 [198 Cal.Rptr. 916].) "[T]he community of interest requirement is not satisfied if every member of the alleged class would be required to litigate numerous and substantial questions determining [the member's] individual right to recover following the 'class judgment' determining issues common to the purported class." (*City of*

---

[4]Block is the only plaintiff who appealed the court's denial of the certification motion.

*San Jose* v. *Superior Court* (1974) 12 Cal.3d 447, 459 [115 Cal.Rptr. 797, 525 P.2d 701, 76 A.L.R.3d 1223] (*San Jose*).)

■  The standard of review that we must apply on appeal is also settled. The trial court is vested with broad discretion to determine whether a class should be certified. (*Osborne* v. *Subaru of America, Inc.* (1988) 198 Cal.App.3d 646, 654 [243 Cal.Rptr. 815] (*Osborne*).) "Our task on appeal is not to determine in the first instance whether the requested class is appropriate but rather whether the trial court has abused its discretion in denying certification." (*Ibid.*) We "will not disturb a trial court ruling on class certification which is supported by substantial evidence unless (1) improper criteria were used [citation]; or (2) erroneous legal assumptions were made [citation]." (*Richmond, supra,* 29 Cal.3d at p. 470.)

■  Here, the trial court declined to certify the class because "In view of the diverse factual and legal issues to be resolved . . . , it appears to the court that if certified as a class action this action would in fact become one of multiple lawsuits separately tried." That ruling was reasonable and certainly did not constitute an abuse of discretion.

First, the proposed class was large, approximately 800 men; and plaintiffs sought damages for an extremely broad range of conduct; i.e., every single use of their "names, voices, signatures, photographs and/or likenesses" on products such as "books, films, trading cards, collector merchandise, memorabilia, and apparel" that had occurred in California since 1992. Thus, plaintiffs were seeking damages for thousands (or perhaps even tens of thousands) of individual claims.[5] The task of evaluating those claims would have been daunting at best. As the trial court stated, "Each use of a class member's name, voice, signature, photograph or likeness for each product . . . will have to be examined for each class member to determine whether the use violates either his statutory right of publicity or his common law right of publicity . . . ."

Second, the court's ability to award damages for those thousands (or tens of thousands) of individual claims was complicated by several factors. To begin with, the action sought damages for each class member's right of publicity; and the value of each player's right of publicity would depend, at least in part, on the level of his celebrity. Hall of Fame players such as Stan Musial, Ted Williams, and Joe DiMaggio might be entitled to one level of

---

[5]The large number of claims plaintiffs were asserting is illustrated by a concession that Block's counsel made during oral argument. Counsel admitted that a single film clip of a pitcher throwing a no-hitter would result in separate claims for the pitcher, the catcher, each batter, and all the fielders who were depicted.

compensation; journeyman players who had a lengthy (albeit unspectacular) career a different level; while relatively unknown players such as appellant Block, who had the proverbial "cup of coffee" in the major leagues, might be entitled to yet another level of compensation. Plaintiffs failed to provide the court with any method to account for this variation when awarding damages. Furthermore, the complaint sought damages only for unauthorized uses that had occurred in California while many of the products that carried the unauthorized uses were distributed nationally. Again, plaintiffs failed to provide the court with a method it could use to apportion damages appropriately.

Third, while some issues, such as the statute of limitations for a cause of action alleging a violation of the right of publicity in California, might be common for all members of the class, others—such as the affirmative defenses of consent, waiver, or estoppel—clearly were not. As the trial court recognized, "Some class members over the years maintained a professional relationship with [baseball]; some participated in Major League Baseball promotion; some publicized themselves; some attended card or photograph signing shows; some never had anything further to do with baseball; some objected to some types of uses and not to other types of uses; . . . and some objected not at all. . . . [F]or each player it will be necessary to conduct a factual inquiry into the nature and extent of his participation, if any, in the business of baseball, his knowledge of the use of his name, likeness, etc. and his response to any such use to determine whether any of these affirmative defenses obtain as to each player." The fact that the trial court would be obligated to evaluate each of these defenses for each member of the class, weighed heavily against certification. (*San Jose, supra,* 12 Cal.3d at p. 459.)

We conclude these three factors, taken together, amply support the trial court's conclusion that "if certified as a class action this action would in fact become one of multiple lawsuits separately tried." The trial court did not abuse its discretion when it denied plaintiffs' motion.

The various arguments that Block advances when urging a contrary conclusion are unpersuasive. First, Block contends the trial court erred when it denied certification because there were many common questions of law or fact, e.g., all members of the class apparently signed the same contract that did not include a clause that explicitly assigned their right of publicity to the club; all were seeking damages under the same legal theory and, thus, their claims would be subject to the same statute of limitations; and the issue of whether injunctive relief might be available would be common to all. However, the issue is not simply whether common questions of law or fact

exist but whether they *predominate.* (*Richmond, supra,* 29 Cal.3d at p. 470.) Here, given the numerous complex issues the trial court would be required to evaluate for each member of the class if the action were certified, we agree with the trial court's conclusion that common issues of law or fact did not predominate here.

Next, Block contends the court erred when it concluded that difficulties in awarding damages weighed against certification. According to Block, damages could simply be based on "defendants' illicit profits" which could be determined by "mathematical calculation, utilizing a common and relatively uncomplicated formula." However, Block has not identified any such "formula" either in the trial court or in his briefing on appeal. Furthermore, as the trial court observed, "There are several problems with [Block's] approach. First, there is nothing in the record to suggest how these profits would be calculated for the varied uses that are the subject matter of this action. Second, there remains the problem of how to distribute these profits among the class members . . . who enjoy varying degrees of celebrity. Third, there is nothing in the record to suggest how these profits should be apportioned between pre 1947 and post 1947 uses for the same player when a use includes both periods or pre 1947 actionable uses and post 1947 uses involving players who are not members of the class when a use includes both periods. Finally, it is not clear how in the face of all of these complications profits for California uses alone would be segregated from profits that are earned from multi-state uses."

Next, Block contends the court erred because it failed to consider the use of subclasses to deal with the various complexities identified above. ■ While case law makes clear that a trial court "has an obligation to consider the use of subclasses and other innovative procedural tools proposed by a party to certify a manageable class" (*Osborne, supra,* 198 Cal.App.3d at p. 653), here, the plaintiffs failed to provide the trial court with a concrete proposal describing how such subclasses would be defined, how they would be administered, or how they would help the court deal with the complexities inherent in the proposed class.[6] ■ We cannot conclude the trial court erred when it failed to consider something the plaintiffs never proposed.

---

[6]The first time Block made a concrete proposal to divide the action into subclasses was in his reply brief on this appeal. We reject the proposal for two reasons: First, we do not consider arguments that are made for the first time in a reply brief. (See 9 Witkin, Cal. Procedure (4th ed. 1997) Appeal, § 616, pp. 647-648.) Second, the method Block proposes— dividing the claims into three subcategories: (1) print publications, (2) photographs, and (3) films and videotapes—does not address the complexities caused by varying degrees of celebrity, varying levels of damage, and the need to evaluate numerous defenses individually.

Block also argues the order denying certification must be reversed because the court did not explicitly consider that if certification were denied, many class members would be unlikely to pursue their claims individually because they are too small. The persuasiveness of this argument is diminished significantly by the fact that Block argues throughout his briefs that a likely result of the court's order is that there will be a multiplicity of suits.[7] Furthermore, Block has not cited any California case that holds a trial court is obligated to discuss that factor explicitly, and the cases make clear that certification is not appropriate if the individual claims are so small that class members are unlikely to benefit significantly. (See *Blue Chip Stamps* v. *Superior Court* (1976) 18 Cal.3d 381, 386 [134 Cal.Rptr. 393, 556 P.2d 755] [The court holds certification inappropriate "when potential recovery to the individual is small and when substantial time and expense would be consumed in distribution . . . ."]; see also *Caro* v. *Procter & Gamble Co.* (1993) 18 Cal.App.4th 644, 657-660 [22 Cal.Rptr.2d 419].)

Finally, Block contends that the court should have granted certification under the analysis set forth in *Vinci* v. *American Can Co.* (1984) 9 Ohio St.3d 98 [459 N.E.2d 507]. We are unpersuaded. The plaintiff in *Vinci* was a former Olympic athlete who filed a class action seeking damages under a right of publicity theory on behalf of himself and 67 other Olympic athletes who were depicted on a series of disposable paper cups. The trial court certified the action and the Ohio Supreme Court affirmed, holding the trial court did not abuse its discretion in so ruling. There are some similarities between *Vinci* and this action. Both are premised on the right of publicity and both involve athletes of varying celebrity. However, there are also significant differences. First, the trial court in *Vinci* certified the class while the trial court here denied certification. Since our task on appeal is to determine whether the trial court abused its discretion (*Osborne, supra,* 198 Cal.App.3d at p. 654), this factor alone distinguishes *Vinci.* Second, the unauthorized uses at issue in *Vinci* were relatively narrow: a single series of disposable paper cups that depicted the various members of the class. Here, by contrast, plaintiffs seek damages for what appears to be hundreds of different products. Third, there was no hint in *Vinci* that any of the various members of the class might have consented to the defendants' use of their likeness or that the principles of waiver, latches, or estoppel might apply. Here, as we have discussed above, those defenses were applicable and provided a strong barrier to certification. The analysis contained in *Vinci* is not persuasive here.

---

[7]As Block argues in his briefs, "The proposed class is comprised of an estimated 800 individuals providing potential for approximately 800 individual actions." "[T]rying 800 individual cases would create a judicial nightmare."

We conclude the trial court did not abuse its discretion when it declined to certify the class.[8]

## III. DISPOSITION

The order denying certification is affirmed.

Haning, J., and Jones, J., concurred.

Appellant's petition for review by the Supreme Court was denied October 14, 1998.

---

[8]Having reached this conclusion, we need not reach the alternate arguments that Baseball has advanced; i.e., that the class action was uncertifiable, as a matter of law, because of (1) complications caused by California's Uniform Single Publication Act (Civ. Code, § 3425.1 et seq.), and (2) choice of law principles that would have required the court to apply the law of the state in which each individual class member lives.