Filed 2/11/15  Gray v. AT&T CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| AUSTIN GRAY, | B249701 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC384948) |
| v. | |
| AT&T et al., | |
| Defendants and Respondents. | |

APPEAL from orders of the Superior Court of the County of Los Angeles, William F. Highberger, Judge.  Affirmed.

Knapp, Petersen & Clarke, André E. Jardini, K.L. Myles; Law Office of Thomas W. Falvey, Thomas W. Falvey and Jon D. Henderson for Plaintiff and Appellant.

Orrick, Herrington & Sutcliffe, Julia A. Totten, Sara E. Dionne, Leah L. Spero; Paul, Plevin, Sullivan & Connaughton, Michael C. Sullivan and Aaron A. Buckley for Defendants and Respondents.

## INTRODUCTION

Plaintiff and appellant Austin Gray (plaintiff) filed a class action against defendants and respondents Yellowpages.com, LLC; Southwestern Bell Yellow Pages, Inc.; AT&T, Inc.; and AT&T Services, Inc. (collectively Yellow Pages) that defined a class of employees in 21 different job titles and sought damages for, inter alia, unpaid overtime. After initially certifying the class, the trial court granted Yellow Pages's motion to decertify and denied plaintiff's motion to amend the class definition to eliminate certain job titles from the class definition.

On appeal from the orders granting decertification and denying leave to amend the class definition, plaintiff contends that the trial court applied the wrong legal standard in ruling on the motion to decertify and abused its discretion in denying her leave to amend the class definition. We hold that because the trial court applied the correct legal standard, it did not abuse its discretion by decertifying the class and that plaintiff has failed to demonstrate that she was prejudiced by the order denying leave to amend the class definition. We therefore affirm the two orders from which plaintiff appeals.

## FACTUAL BACKGROUND

### A.      Yellow Pages's Evidence

Yellow Pages provides interactive advertising services. It connects advertisers to consumers through websites and cell phone applications. Yellow Pages's generates revenue by selling ads to advertisers, which ads Yellow Pages produces and publishes electronically. Because consumers access the advertising for free, all of Yellow Pages's revenue comes from advertisers. The ads are produced and published electronically by Yellow Pages's order fulfillment group within the operations department.

Plaintiff was employed by Yellow Pages and its predecessor from April 2004 to January 2007. During her employment, plaintiff held the title of senior product manager and her responsibilities included the toolbar on the Yellowpages.com website, managing an animated website demo, and developing the Yellowpages.com channel on AT&T's U-

verse television product. Plaintiff worked independently with little direct supervision, and was regularly required to exercise discretion and independent judgment.

The work plaintiff performed required her to "build, maintain, and improve the product, namely the websites smartpages.com and yellowpages.com." Specifically, she was involved in the planning, building, testing of and reporting on the success of the live product, which tasks included building product road maps, documenting requirements, creating presentations for senior management about products, providing training for and information to the sales teams about the products and relaying information to third-party vendors who contributed to the products. After she received her assignment from senior management, she would develop a plan for building the product, including determining how it was going to be built, who was going to be involved in building it, who would provide input for the product, whether the product was working or was successful, and how to coordinate all the different aspects of building the products. Once plaintiff had developed an idea for a product, she would present a product-requirements document to senior staff at their weekly meeting, which the staff would review and either approve or disapprove moving forward with the project. From that point, she was responsible for presenting weekly updates to the staff so it could make decisions as issues arose. The majority of her workload involved working on these tasks.

Depending on a class member's job title, job group, and assignment, class members performed many different duties, including the following: *Marketing*: Some class members spent time marketing Yellow Pages's advertisement products, such as developing contests and incentives for sales personnel; other class members spent time marketing the business of Yellow Pages's customers. *Creating And Improving Tools Used By Other Company Employees To Produce Advertisements*: Some class members spent time creating, designing, and developing technological tools for the company; these tools were used by other company employees, including employees who produced the electronic advertisements. *Creating Tools Used By The Company To Manage Its Business*: Class members created, developed, and improved the tools used internally by the company to manage its business, including tools used for data management and to

3

educate sales representatives. *Creating Yellowpages.com's Advertiser Portal*: Some employees worked on the company's advertiser portal, which provides various administrative functions for Yellowpages.com's advertiser customers, including the abilities to pay bills, manage listings, and view performance reports. *Pricing*: Some class members worked with Yellowpages.com's pricing group to advise the company on the pricing of advertising units. *Promoting Yellow Pages With Consumers In The Marketplace*: Some class members worked on consumer-facing tools to promote the Company in the marketplace, such as through the Yellowpages.com website and mobile applications. *Conducting Sales and Performance Analysis*: Some class members supported Yellow Pages by analyzing data on company sales or the performance of company products; depending on the class member, this analysis took a variety of forms, ranging from conducting focus groups of sales and marketing personnel to analyzing company sales and performance figures. *Conducting Market Research*: Some class members analyzed market data to evaluate trends, as well as understand customer needs and user behavior. *Developing And Recommending Company Strategy*: Some class members were responsible for developing and defining the company's strategy on different company products, including recommending and improving company products and initiatives. *Representing the Company Vis-á-vis Outside Vendors*: Some class members interacted with outside vendors on behalf of the company, including determining when to use outside vendors, evaluating vendor proposals, and negotiating deals. *Leading, Training, And Supervising Company Employees*: Some class members had leadership responsibilities and spent time leading, training, and directing the work of other company employees. *Developing Company Policies*: Some class members engaged in setting company policy (*e.g.*, sales policies and practices, style guides) in an effort to help Yellow Pages achieve their goals. *Functioning In an Executive Role*: Some class members were responsible for the overall management of a company product line and were akin to a chief executive officer of that line. *Managing Complex Company Projects*: Some class members spent time managing company projects through the lifecycle of the project, including initiation, design, development, testing, and launch.

Yellow Pages submissions included evidence that at least some, if not most, of the class members performed office, non manual work, performed work related to management policies or business operations, regularly exercised independent discretion, and worked on specialized tools under only general supervision.

## B. Plaintiff's Evidence

In response to Yellow Pages's motion to decertify, plaintiff submitted evidence that was intended to show that all of the employees holding the job titles embraced within the class definition were "production" workers. Her submission included two charts with quotations from Yellow Pages's job descriptions, quotations from certain of Yellow Pages's declarations in support of the motion to decertify, and quotations from the depositions of Yellow Pages's designated persons most qualified. The job description excerpts contained multiple references to "products" such as "websites and online products," including "icons and ad banners," as did the excerpts from Yellow Pages's declarations. In addition, one of Yellow Pages's persons most qualified deponents referred to Yellowpages.com, LLC as a "factory" that built electronic "products." Specifically, Yellow Pages's person designated most qualified to testify, Deric Wong, testified that Yellowpages.com, LLC was considered a "factory" which had "a sales arm that actually [sold] the advertising, the Advertising Solutions" and that Yellowpages.com, LLC was "not making things in [its] factory that you [could] drop on your foot, these [were] products that go on a computer website. . . ." The two charts of quotations were supported by copies of the Yellow Pages's job descriptions, the declarations of its witnesses, and the portions of the deposition transcripts of the person designated most qualified to testify.

## PROCEDURAL BACKGROUND

Plaintiff filed a class action complaint in February 2008, alleging that she and other similarly situated Yellow Pages's employees were misclassified as exempt

employees and, as a result, denied, inter alia, overtime compensation and meal and rest periods. The parties engaged in discovery from December 2008 to February 2010. In March 2010, plaintiff filed a motion for class certification. The trial court denied the motion without prejudice, but allowed plaintiff to conduct further discovery.

Plaintiff renewed her motion for class certification in February 2012. She defined the class as follows: "PRODUCTION EMPLOYEES are defined as: all employees who produced, created, generated, crafted, refined, tested, contributed to or built the electronic products in California for defendants . . . who are not: 1. Paid on a commission basis; or, 2. computer programmers; or, 3. In one of the 'recognized professions' of Wage Order 4-2001, section 1(A)(3); or 4. Those who supervise two or more other employees and have a monthly salary twice California's minimum wage for full-time employment."

In May 2012, the trial court certified the class as defined by plaintiff, without prejudice to a subsequent motion to decertify. Following certification, the parties began the process of developing a class member mailing list. The parties initially generated a class list identifying 108 job titles and 306 employees. After further work to refine the list, a final list with 21 job titles, including approximately 172 employees, was generated.

Based on the final class list, the trial court entered an amended class certification order that defined the class as follows:

"The Class to be certified is defined as: All California PRODUCTION EMPLOYEES who performed work for [Yellowpages.com, LLC's predecessor] from February 2004 to July 2005 and/or performed work for Yellowpages.com, Inc. from January 2005 to the present who were designated as exempt at any time within four years of the date of the filing of this complaint. [¶] PRODUCTION EMPLOYEES are defined as: all employees who produced, created, generated, crafted, refined, tested, contributed to, or built the electronic products in California for defendants . . . who are not: [¶] "1. paid on a commission basis; or [¶] 2. computer programmers; or [¶] 3. in one of the 'recognized professions' of Wage Order 4-2—1, section 1(A)(3); or [¶] 4. Those who supervise two or more other employees and have a monthly salary twice California's

6

minimum wage for full-time employment; and who have or formerly had one or more of the following job titles:

Senior Product Manager, Product Manager, Director Product Management, Associate Director Product Management, Associate Director Operations Delivery, Program Manager, Senior Human Factors Engineer, Channel Manager, Art Director, Director Product Strategy, Senior Writer, Editor, Lead Program Manager, Senior Information Architect, Director Earn Per Call Products, Director YP Clicks, Lead Project Manager, Manager Display Products, Product Campaign Manager, Senior Copy Writer, and Senior Editor."

In March 2013, Yellow Pages filed a motion to decertify the class. Plaintiff thereafter filed a motion for summary adjudication of Yellow Pages's affirmative defense that the class members were all properly classified as exempt. Plaintiff also filed a motion to amend the class definition to exclude four of the 21 job titles on which the class definition was based.

In May 2013, the trial court issued a tentative ruling granting Yellow Pages's motion to decertify, denying plaintiff's motion to amend the class definition, and taking plaintiff's motion for summary adjudication off calendar. Following a hearing on the motions, the trial court adopted its tentative ruling as the ruling of the court and directed Yellow Pages to prepare formal orders in accordance with its ruling. Plaintiff filed a timely notice of appeal from the orders decertifying the class and denying the motion to amend the class definition.

## DISCUSSION

### A.     Standard of Review

Our Supreme Court has outlined the class action procedure as follows: "Code of Civil Procedure section 382 authorizes class actions 'when the question is one of a common or general interest, of many persons, or when the parties are numerous, and it is impracticable to bring them all before the court . . . .' (Code Civ. Proc., § 382.) A trial

7

court is generally afforded great latitude in granting or denying class certification, and we normally review a ruling on certification for an abuse of discretion. (*Sav-On Drug Stores, Inc. v. Superior Court* (2004) 34 Cal.4th 319, 326-327 [17 Cal.Rptr.3d 906, 96 P.3d 194] (*Sav-On Drug Stores*).) We do not apply this deferential standard of review if the trial court has evaluated class certification using improper criteria or an incorrect legal analysis: '[A] trial court ruling supported by substantial evidence generally will not be disturbed "unless (1) improper criteria were used [citation]; or (2) erroneous legal assumptions were made . . . ."' (*Linder v. Thrifty Oil Co*. (2000) 23 Cal.4th 429, 435-436 [97 Cal.Rptr.2d 179, 2 P.3d 27] (*Linder*); accord, *Gattuso v. Harte-Hanks Shoppers, Inc*. (2007) 42 Cal.4th 554, 575-576 [67 Cal.Rptr.3d 468, 169 P.3d 889]; *Sav-On Drug Stores, supra*, 34 Cal.4th at pp. 326-327; see *Bartold v. Glendale Federal Bank* (2000) 81 Cal.App.4th 816, 828-829 [97 Cal.Rptr.2d 226] ['[i]f the trial court failed to follow the correct legal analysis when deciding whether to certify a class action, "an appellate court is required to reverse . . . 'even though there may be substantial evidence to support the court's order'"'].) The reviewing court 'must examine the trial court's reasons for denying class certification.' (*Linder, supra*, 23 Cal.4th at p. 436.) When reviewing an order denying class certification, appellate courts 'consider only the reasons cited by the trial court for the denial, and ignore other reasons that might support denial.' (*Bufil v. Dollar Financial Group, Inc*. (2008) 162 Cal.App.4th 1193, 1205 [76 Cal.Rptr.3d 804].)" (*Jaimez v. Daiohs USA, Inc.* (2010) 181 Cal.App.4th 1286, 1297-1298.)

## B. Legal Principles

### 1. Class Action Procedure

Our Supreme Court has said, "Drawing on the language of Code of Civil Procedure section 382 and federal precedent, we have articulated clear requirements for the certification of a class. The party advocating class treatment must demonstrate the existence of an ascertainable and sufficiently numerous class, a well-defined community of interest, and substantial benefits from certification that render proceeding as a class

superior to the alternatives.  (Code Civ. Proc., § 382; *Fireside Bank* [*v. Superior Court* (2007) 40 Cal.4th 1069,] 1089 (*Fireside Bank*); *Linder*[, *supra,*] 23 Cal.4th [at p.] 435 [97 Cal.Rptr.2d 179, 2 P.3d 27]; *City of San Jose* [*v. Superior Court* (1974) 12 Cal.3d 442], 459.)  'In turn, the "community of interest requirement embodies three factors:  (1) predominant common questions of law or fact; (2) class representatives with claims or defenses typical of the class; and (3) class representatives who can adequately represent the class."'  (*Fireside Bank*, at p. 1089, quoting *Richmond v. Dart Industries, Inc.* (1981) 29 Cal.3d 462, 470 [174 Cal.Rptr. 515, 629 P.2d 23].)"  (*Brinker Restaurant Corp. v. Superior Court* (2012) 53 Cal.4th 1004, 1021 (*Brinker*).)

The Supreme Court has observed that the class action procedure is based on equitable principles.  "'The class action is a product of the court of equity—codified in section 382 of the Code of Civil Procedure.  It rests on considerations of necessity and convenience, adopted to prevent a failure of justice.'"  (*Fireside Bank*, *supra,* 40 Cal.4th at p. 1078)  "'The certification question is "essentially a procedural one that does not ask whether an action is legally or factually meritorious." [Citation.]  A trial court ruling on a certification motion determines "whether . . . the issues which may be jointly tried, when compared with those requiring separate adjudication, are so numerous or substantial that the maintenance of a class action would be advantageous to the judicial process and to the litigants." [Citations.]'  (*Sav-On Drug Stores, supra*, 34 Cal.4th at p. 326.)"  (*Lopez v. Brown* (2013) 217 Cal.App.4th 1114, 1126.)

### 2.    *Wage and Hour Rules*

While this matter was being litigated in the trial court, the California Supreme Court issued an opinion in *Harris v. Superior Court* (2011) 53 Cal.4th 170 (*Harris*), which opinion explained in detail the "administrative exemption" that was at issue in the trial court on Yellow Pages's motion to decertify.  The issue in *Harris* was whether,

under newly promulgated Wage Order 4-2001,[1] the Court of Appeal had properly applied the administrative exemption by using the so-called "administrative /production worker dichotomy[2]" test. The court began its analysis by reviewing the historical background of

---

[1]     Wage Order 4-2001, which is codified in Title 8 of the California Code of Regulations section 11040, provides in pertinent part: "1. Applicability of Order[.] This order shall apply to all persons employed in professional, technical, clerical, mechanical, and similar occupations whether paid on a time, piece rate, commission, or other basis, except that: [¶] (A) Provisions of sections 3 through 12 [(governing, e.g., hours and days of work, minimum wages and rest periods)] shall not apply to persons employed in administrative, executive, or professional capacities. The following requirements shall apply in determining whether an employee's duties meet the test to qualify for an exemption from those sections: (1) Executive Exemption . . . [¶] . . . [¶] (2) Administrative Exemption[.] A person employed in an administrative capacity means any employee: (a) Whose duties and responsibilities involve either: (I) The performance of office or non-manual work directly related to management policies or general business operations of his/her employer or his employer's customers; or (II) the performance of functions in the administration of a school system . . . ; and (b) Who customarily and regularly exercises discretion and independent judgment; and (c) Who regularly and directly assists a proprietor, or an employee employed in a bona fide executive or administrative capacity (as such terms are defined for purposes of this section); or (d) Who performs under only general supervision work along specialized or technical lines requiring special training, experience, or knowledge; or (e) Who executes under only general supervision special assignments and tasks; and (f) Who is primarily engaged in duties that meet the test of the exemption. The activities constituting exempt work and non-exempt work shall be construed in the same manner as such terms are construed in the following regulations under the Fair Labor Standards Act effective as of the date of this order: 29 C.F.R. Sections 541.201-205, 541.207-208, 541.210, and 541.215. Exempt work shall include, for example, all work that is directly and closely related to exempt work and work which is properly viewed as a means for carrying out exempt functions. The work actually performed by the employee during the course of the workweek must, first and foremost, be examined and the amount of time the employee spends on such work, together with the employer's realistic expectations and the realistic requirements of the job, shall be considered in determining whether the employee satisfies this requirement. (g) Such employee must also earn a monthly salary equivalent to no less than two . . . times the state minimum wage for full-time employment. . . ."

[2]     "In basic terms, the administrative/production worker dichotomy distinguishes between administrative employees who are primarily engaged in '"administering the business affairs of the enterprise"' and production-level employees whose '"primary duty is producing the commodity or commodities, whether goods or services, that the

10

Wage Order 4-2001.  It said, "[In 1999,] the Legislature passed the 'Eight-Hour-Day Restoration and Workplace Flexibility Act of 1999.'  (Stats. 1999, ch. 134, § 1, p. 1820, adding and amending provisions of Lab. Code, § 500 et seq.)  The act amended Labor Code section 510, which provides that a California employee is entitled to overtime pay for work in excess of eight hours in one workday or 40 hours in one week.  (Lab. Code, § 510, subd. (a).)  However, Labor Code section 515, subdivision (a), added by the act, exempts from overtime compensation 'executive, administrative, and professional employees' whose primary duties (footnote omitted) 'meet the test of the exemption,' who 'regularly exercise[] discretion and independent judgment in performing those duties' and who earn a monthly salary at least twice the state minimum wage for full-time employees.  (Lab. Code, § 515, subd. (a).)  [¶]  Under the statute then, to qualify as 'administrative,' employees must (1) be paid at a certain level, (2) their work must be administrative, (3) their primary duties must involve that administrative work, and (4) they must discharge those primary duties by regularly exercising independent judgment and discretion."  (*Harris, supra*, 53 Cal.4th at pp. 177-178.)

The court in *Harris, supra*, 53 Cal.4th 170, next described the interplay between state and federal law in interpreting and applying the administrative exemption.  "Like its predecessor, Wage Order 4-2001 exempts 'persons employed in administrative, executive, or professional capacities.'  (Wage Order 4-2001, subd. 1(A).)  Unlike its predecessor, subdivision 1(A)(2) of the new wage order describes the administrative exemption in some detail.  It provides, in part, that persons are employed in an administrative capacity if their duties and responsibilities involve office or nonmanual work '*directly related to management policies or general business operations of* [*their*] *employer or* [*the*] *employer's customers.*'  (Wage Order 4-2001, subd. 1(A)(2)(a)(i), italics added.)  [¶]  Federal Regulations former part 541.205 (2000) is one of the regulations incorporated in Wage Order 4-2001, subdivision 1(A)(2)(f).  (Footnote omitted.)  That regulation defined the italicized phrase above.  It is this 'directly related'

enterprise exists to produce and market." [Citation.]'"  (*Harris, supra*, 53 Cal.4th at p. 183.)

phrase that distinguishes between 'administrative operations' and 'production' or 'sales' work. (Fed. Regs. § 541.205(a) (2000).) [¶] Parsing the language of the regulation reveals that work qualifies as 'administrative when it is '*directly related*' to management policies or general business operations. Work qualifies as 'directly related' if it satisfies two components. First, it must be *qualitatively* administrative. Second, *quantitatively*, it must be of substantial importance to the management or operations of the business. Both components must be satisfied before work can be considered 'directly related' to management policies or general business operations in order to meet the test of the exemption. (Fed. Regs. § 541.205(a) (2000).) [¶] The regulation goes on to further explicate both components. Federal Regulations former part 541.205(b) (2000) discusses the qualitative requirement that the work must be administrative in nature. It explains that administrative operations include work done by 'white collar' employees engaged in servicing a business. Such servicing may include, . . . advising management, planning, negotiating, and representing the company. Federal Regulations former part 541.205(c) (2000) relates to the quantitative component that tests whether work is of 'substantial importance' to management policy or general business operations. [¶] Read together, the applicable Labor Code statutes, wage orders, and incorporated federal regulations now provide an explicit and extensive framework for analyzing the administrative exemption." (*Harris, supra*, 53 Cal.4th at pp. 180-182.)

The court in *Harris, supra*, 53 Cal.4th 170 then examined whether the appropriate wage and hour principles had been applied correctly by the Court of Appeal in that case, including whether that court's use of the "administrative/production worker dichotomy" test was appropriate in light of newly promulgated Wage Order 4-2001. The court concluded that "the Court of Appeal improperly applied the administrative/production worker dichotomy as a dispositive test. [¶] The essence of our holding is that, in resolving whether work qualifies as administrative, *courts must consider the particular facts before them and apply the language of the statutes and wage orders at issue*." (*Id.* at p. 190, italics added.) The court in *Harris*, however, qualified its holding by stating

12

that "[w]e do not hold that the administrative/production worker dichotomy . . . can never be used as an analytical tool." (*Ibid*.)

### C.      Commonality Analysis

In ruling on Yellow Pages's motion to decertify, the trial court concluded that common issues did not predominate over those which could be determined on a classwide basis. According to the trial court, "the class of 21 job titles (or even plaintiff's revised list of only 17 job titles) raises individualized job-specific and person-specific factual issues necessary to determining whether or not there is liability on the various elements of the administrative exemption. The class includes a wide variety of skills necessary for the creation and formulation of new commercially useful intellectual property, including effective visual presentation of potential customer content, data analysis for search optimization for customer (advertiser) efficient use of scarce advertising dollars, product design to avoid user (customer) frustration, analysis of product performance, market research, strategic planning for defendants' own business advantage and a whole host of dissimilar duties. While defendants appear to have persuasive arguments factually that many of these specific jobs involve matters of substantial importance to defendants' own business, to the business of its customers or to both, the analysis is necessarily job-specific and often person-specific." As explained below, based on the evidence in the record on the motion to decertify, we conclude that the trial court, applying the correct legal standard, did not abuse its discretion in determining that common factual issues did not predominate.

"'A class may be certified when common questions of law and fact predominate over individualized questions. As a general rule if the defendant's liability can be determined by facts common to all members of the class, a class will be certified even if the members must individually prove their damages. . . . [T]o determine whether common questions of fact predominate the trial court must examine the issues framed by the pleadings and the law applicable to the causes of action alleged.' (*Hicks v. Kaufman & Broad Home Corp*. (2001) 89 Cal.App.4th 908, 916 [107 Cal.Rptr.2d 761], fns.

13

omitted.)  A class action "'will not be permitted . . . where there are diverse factual issues to be resolved, even though there may be many common questions of law.'"  (*Block v. Major League Baseball* (1998) 65 Cal.App.4th 538, 542 [76 Cal.Rptr. 2d 567].)  "'The burden is on the party seeking certification to establish the existence of both an ascertainable class and a well-defined community of interest among the class members.'" (*Lockheed Martin Corp. v. Superior Court* (2003) 29 Cal.4th 1096, 1104 [131 Cal.Rptr.2d 1, 63 P.3d 913][(*Lockheed*)].)"  (*Ali v. U.S.A. Cab Ltd.* (2009) 176 Cal.App.4th 1333, 1347.)  In examining whether common issues of law or fact predominate, we must consider the plaintiff's legal theory of liability (*Sav-On Drug Stores, supra*, 34 Cal.4th at pp. 326-327), any affirmative defenses that may defeat class certification by raising issues specific to each potential class member, and whether the issues presented by that defense predominate over common issues.  (*Walsh v. IKON Office Solutions, Inc.* (2007) 148 Cal.App.4th 1440, 1450.)

In reviewing a trial court's determination on the commonality element, "'we must consider whether the record contains substantial evidence to support the trial court's predominance finding, as a certification ruling not supported by substantial evidence cannot stand.'  (*Lockheed*, *supra*, 29 Cal.4th at p. 1106.)  But, '[w]here a certification order turns on inferences to be drawn from the facts, "'the reviewing court has no authority to substitute its decision for that of the trial court.'"'  (*Massachusetts Mutual Life Ins. Co. v. Superior Court* (2002) 97 Cal.App.4th 1282, 1287 [119 Cal.Rptr.2d 190]; accord, *Walker v. Superior Court* (1991) 53 Cal.3d 257, 272 [279 Cal.Rptr. 576, 807 P.2d 418].)"  (*Sav-On, supra* 34 Cal.4th at p. 328.)

Plaintiff argues that the trial court erred when it decertified the class.  According to plaintiff, because the trial court ignored her factual submissions and made impermissible merits-based determinations at the class certification stage, it applied an incorrect legal standard to the certification question before it.  Plaintiff also contends that there was an overriding common issue of law that warranted class treatment of her claims—i.e., whether production workers can ever be exempt under state wage and hour laws.

14

Contrary to plaintiff's assertion, the trial court did not make merits-based determinations or ignore plaintiff's evidence in making its decertification decision. Rather, it was plaintiff who made merits-based submissions and arguments in opposing the decertification motion. According to plaintiff, her evidence established, as a factual matter, that all of the workers in the various job titles embraced within the class definition were production workers, notwithstanding Yellow Pages's substantial evidence to the contrary.

Plaintiff's merits-based assertion ignores the essential question framed by plaintiff's class definition and Yellow Pages's affirmative defense based on the administrative exemption—whether the class members' status as alleged production workers could be determined on a classwide basis using common proof. In ruling on the decertification motion, the trial court concluded, based on the parties' respective evidentiary submissions, that the Yellow Pages's liability to the class could not be adjudicated on a classwide basis using proof common to each class member because, under the fact-based analysis required under *Harris, supra,* 53 Cal.4th 170, the determination of a given class member's exempt status would require individualized proof.

Although plaintiff presented conclusory evidence that the class members were primarily engaged in "production" work, Yellow Pages presented specific and substantial evidence to the contrary, evidence from which the trial court could have reasonably concluded that individual factual issues predominated over those that could be resolved on a classwide basis. As the declarations submitted by Yellow Pages demonstrated, the products on which the class members worked were not the actual advertisements sold to businesses—i.e., the commodity that the enterprise existed to produce and market—but rather were the technological tools used by the sales employees who sold the advertising and who had been classified as nonexempt. In addition, that evidence showed that many of the class members did not directly work on those technological tools, but instead spent time on other unrelated tasks, such as developing contests and incentives for sales staff, developing pricing for the advertising units, and analyzing sales and performance. That

15

evidence was sufficient to support the trial court's conclusion that individualized proof on a job-by-job or employee-by-employee basis would be necessary to determine whether a given class member was a production worker or an administrative worker. Because the trial court's findings on the commonality element were supported by substantial evidence, we have no authority to substitute our decision for that of the trial court. Instead, we must affirm the order decertifying the class because plaintiff has failed to demonstrate that the trial court abused its discretion in making that order.

In reaching this conclusion, we reject plaintiff's assertion that there was an overriding common legal issue concerning whether production workers can ever be exempt from state wage and hour requirements. As noted above, that issue assumes a fact that was not and could not have been decided at the class certification stage—whether some or all of the class members were misclassified as exempt when, in fact, they were nonexempt production workers. Thus, the issue as framed by plaintiff could only be common to all class members if and when a finder of fact made a preliminary determination that some or all of the class members were production workers under Wage Order 4-2001. Given that no such liability-determinative finding was or could have been made, the issue framed by plaintiff merely begged the central factual question concerning Yellow Pages's liability to the class and therefore did not justify class certification under *Brinker, supra,* 53 Cal.4th 1004 or the Court of Appeal decisions decided after *Brinker* upon which plaintiff relies

For the first time in either the trial court or on appeal, plaintiff argues in her reply brief that the trial court impermissibly shifted the burden of proof on the decertification motion and ignored Yellow Pages's failure to submit evidence on the criteria set forth in *Eicher v. Advanced Business Integrators, Inc*. (2007) 151 Cal.App.4th 1363, 1371—whether the employee performs management functions or is involved in general business operations, customarily exercises discretion and independent judgment, does specialized work under general supervision, meets the exemption at least 50 percent of the time, and earns more than twice the minimum wage. Because plaintiff failed to raise this contention in either the trial court or in her opening brief, she has either forfeited it on

16

appeal or otherwise improperly raised it in her reply. (*Keener v. Jeld-Wen, Inc.* (2009) 46 Cal.4th 247, 264-265 [forfeiture]; *Rose v. Bank of America, N.A.* (2013) 57 Cal.4th 390, 399, fn. 9 [matters improperly raised in reply brief need not be addressed].) Moreover, as set forth above, Yellow Pages submitted declaration testimony on most, if not all, of the elements of the administrative exemption, evidence from which the trial court reasonably concluded that the issues to be tried separately predominated over the issues that could be resolved using proof common to each class member. On the commonality issue, Yellow Pages was not required at the certification stage to meet its burden of proof on all of the elements of the administrative exemption as plaintiff now belatedly contends. Instead, it was required to show only that the factual issues subject to common proof did not predominate over those to be tried separately. The trial court found that Yellow Pages had made the required showing, and substantial evidence supported that finding.

### D.     Motion to Amend Class Definition

Plaintiff contends that the trial court abused its discretion when it denied her motion for leave to amend the class definition by eliminating four of the 21 job titles embraced within the class definition. Yellow Pages counters that the order denying leave to amend is a nonappealable order and that, in any event, plaintiff has failed to show either an abuse of discretion or prejudice from the order denying leave to amend.

Assuming, without deciding, that the order denying leave to amend is appealable because it affects the appealable decertification order, we conclude that plaintiff has failed to demonstrate that she was prejudiced by the order. (*Kim v. Konad USA Distribution, Inc.* (2014) 226 Cal.App.4th 1336, 1352 ["'[i]t is the appellant's burden to affirmatively demonstrate reversible error.' (*California Pines Property Owners Assn. v. Pedotti* (2012) 206 Cal.App.4th 384, 392 [141 Cal.Rptr.3d 793].) "'No form of civil trial error justifies reversal and retrial, with its attendant expense and possible loss of witnesses, where in light of the entire record, there was no actual prejudice to the appealing party." [Citation.] Accordingly, errors in civil trials require that we examine 'each individual case to determine whether prejudice actually occurred in light of the

17

entire record.'" (*Cassim v. Allstate Ins. Co.* (2004) 33 Cal.4th 780, 801-802 [16 Cal.Rptr.3d 374, 94 P.3d 513].)"].) In its ruling on the decertification order, the trial court ruled that the class list of 21 job titles *"or even plaintiff's revised list of only 17 job titles,"* raised individualized factual issues concerning whether class members were administratively exempt. Based on that finding, it is clear that the outcome on the decertification motion would have been the same even if the trial court had allowed plaintiff to reduce the number of job titles in the class definition to 17. Because plaintiff's appeal from the order denying leave to amend does not explain how she would have obtained a different outcome in light of the trial court's finding concerning the proposed class with 17 job titles, she has failed to demonstrate the prejudice required to reverse the order denying leave to amend the class definition.

## DISPOSITION

The orders decertifying the class and denying plaintiff leave to amend the class definition are affirmed. Yellow Pages is awarded costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

MOSK, J.

We concur:

TURNER, P. J.

KRIEGLER, J.

18